# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A13-1285

State of Minnesota,
Respondent,

vs.

Jerry Expose, Jr.,
Appellant.

**Filed July 14, 2014**
**Reversed and Remanded**
**Chutich, Judge**

Ramsey County District Court
File No. 62-CR-12-8934

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, Theodore Sampsell-Jones, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Rodenberg, Judge; and Chutich, Judge.

## S Y L L A B U S

Minnesota law does not recognize a "threats exception" to the statutory psychologist-client testimonial privilege in Minnesota Statutes section 595.02, subdivision 1(g) (2012). Absent a client's knowing and intentional waiver of the

privilege, a psychologist may not testify in a criminal trial about threats of physical violence made by the client during an individual therapy session.

**O P I N I O N**

**CHUTICH**, Judge

Appellant Jerry Expose Jr. appeals his conviction of terroristic threats, arguing that the district court erroneously ruled that an exception to the psychologist-client privilege exists for threatening statements made by a client to his or her psychologist and that the district court improperly allowed witnesses to testify about privileged information. Because Expose's communications with a therapist qualify under the psychologist-client privilege statute and no "threats exception" to the privilege exists in Minnesota, we reverse Expose's conviction and remand.

**FACTS**

In the fall of 2012, appellant Jerry Expose Jr. attended individual counseling sessions with N.M., a therapist at Thad Wilderson & Associates, a mental-health clinic. Expose was required to attend anger-management therapy as part of a court-ordered case plan in a child-protection case.

On October 10, 2012, Expose arrived at his appointment with N.M. visibly upset. Before his appointment with N.M., Expose's child-protection worker, D.P., canceled a planned unsupervised visit with his children because Expose did not comply with a requirement of his case plan. N.M. noticed Expose's emotional state and asked him why he was upset. In response, Expose threatened the child-protection worker. N.M. testified

at trial that Expose said:

> [H]e felt that the child protection worker was a barrier to him getting his kids back and if . . . his future court date did not go the right way that he would break her back, and then if he could not get to her . . . he'd just have to make a couple phone[] calls and he can have someone else do it if he couldn't get to her.

After Expose made these threats against D.P., N.M. told Expose that she was a "mandated reporter." Expose said, "I don't give a f-ck," and noted that "[e]verybody has to go to their car at some point." Because N.M. believed that Expose's threats triggered an ethical duty to warn, she contacted her supervisor, H.F., the assistant clinical director. H.F. agreed with her and directed her to call the child-protection worker and the police to alert them to the threats.

After learning of Expose's threat to harm her, D.P. showed visible signs of concern. She was no longer comfortable meeting with families at work, had nightmares, and had difficulty falling asleep. D.P.'s superior removed her from Expose's case, relocated her office, and instructed a deputy to escort her to and from her car.

In November 2012, the state charged Expose with one count of terroristic threats. *See* Minn. Stat. § 609.713, subd. 1 (2012). Before trial, Expose moved the district court to prohibit N.M. from testifying that she called D.P. and the police because she had a statutory duty to warn D.P. He contended that because N.M. was not a licensed mental-health professional, the duty-to-warn statute did not apply.[1] In response, the prosecution

---

[1] The "duty to warn" statute applies to a "licensee" and requires the licensee to communicate a "specific, serious threat of physical violence" to a potential victim. Minn. Stat. § 148.975, subd. 2 (2012).

asserted that N.M. should be treated as a licensed psychologist because she was working under the supervision of someone who was licensed. The district court denied Expose's motion.

After opening statements, but before any testimony, Expose again objected to N.M.'s testimony, contending that, consistent with the district court's prior ruling, N.M. should be treated as a psychologist under the psychologist-client privilege and thereby precluded from testifying against her client. The district court denied Expose's motion, concluding that N.M.'s testimony was admissible "[a]s an exception to the privilege." The district court found that the statements "are not protected because they are statements of a threat of serious imminent harm to another person."

A jury convicted Expose of making terroristic threats, and the district court sentenced him to a stayed sentence of 28 months' imprisonment. This appeal followed.

## ISSUES

I.  Did Expose fail to object to N.M.'s testimony in a timely manner, waiving his claim of privilege?

II. Does the psychologist-client privilege statute, Minnesota Statutes section 595.02, subdivision 1(g) (2012), apply to Expose's communications with N.M.?

III. Do Expose's threats against a third person during a therapy session fall under an exception to the psychologist-client privilege statute for threatening statements?

IV. Was admission of N.M.'s testimony harmless error?

## ANALYSIS

Expose asserts that the district court erred by allowing N.M. to testify about statements he made while he was in an individual therapy session with her. The state

4

counters that we need not reach the merits of Expose's privilege argument because Expose failed to timely object to N.M.'s testimony and any error in admitting N.M.'s testimony was harmless. The state further contends that N.M. does not qualify as a psychologist under Minnesota Statutes section 595.02, subdivision 1(g), and that, even if she did qualify as a psychologist, the threats that Expose made during therapy were not necessary to enable N.M. to act in a professional capacity. Finally, the state asserts that N.M. testified against Expose under a "threats exception" to the statutory privilege. Because we conclude that Expose did not waive his objection to N.M.'s testimony; the requirements of the testimonial privilege set out in section 595.02, subdivision 1(g), were met; a "threats exception" to the psychologist-client privilege is not recognized in Minnesota; and admission of Expose's statements was not harmless, we reverse Expose's conviction and remand for further proceedings consistent with this opinion.

## I.     Expose Did Not Waive His Objection to N.M.'s Testimony

As a threshold issue, the state argues that Expose waived the privilege issue on appeal because he failed to object to N.M.'s testimony in a timely fashion under Minnesota Rule of Criminal Procedure 10.01, subdivision 2.[2] We reject this assertion because, unlike a constitutional challenge to the admission of evidence, which must be

---

[2] Subdivision 2 provides in pertinent part:
> Defenses, objections, issues or requests that can be determined without trial on the merits must be made before trial by a motion . . . to grant appropriate relief. The motion must include all defenses, objections, issues, and requests then available. Failure to include any of them in the motion constitutes waiver . . . . The court can grant relief from the waiver for good cause.

Minn. R. Crim. P. 10.01, subd. 2.

raised at an omnibus hearing to be timely, *see State v. Pederson-Maxwell,* 619 N.W.2d 777, 780 (Minn. App. 2000), Expose raised an evidentiary objection based on privilege. Under the Minnesota Rules of Evidence, any "timely objection" preserves a claimed error in admitting evidence. Minn. R. Evid. 103(a).

Expose first objected to N.M.'s testimony through a motion in limine, which is one way to timely object to anticipated evidence. *See* Minn. R. Evid. 103(a) 2006 advisory comm. cmt. Before N.M. testified, and based upon the district court's ruling that N.M. could testify about her duty to warn, Expose then objected to her testimony, contending that the psychologist-client privilege precluded her from testifying against Expose, her client. In response, the state never contended that Expose waived this objection by failing to assert it earlier; instead, it argued the merits of the objection.

After hearing the parties' positions, the district court again ruled in the state's favor, finding that the privilege did not apply because the statements were threats of "serious imminent harm to another person." Accordingly, Expose preserved the issue of the applicability of the psychologist-client privilege for appeal.

## II. The Psychologist-Client Testimonial Privilege Applies to Expose's Statements

The district court did not explicitly rule that Expose's statements to N.M. were within the scope of the psychologist-client privilege, but it implicitly did so when it ruled that N.M.'s testimony was admissible "[a]s an exception to the privilege." Even though the state asserted to the district court that, for purposes of the duty-to-warn statute, N.M. should be treated as a licensed psychologist, it now contends that the psychologist-client evidentiary privilege does not apply because Expose did not show that N.M. fits the plain

6

language of the statute. The state further contends that, even if N.M. is considered to be a psychologist, Expose's statements to her were not "necessary" for counseling. These contentions are not persuasive.

The availability of a privilege established by statute "is an evidentiary ruling to be determined by the [district] court and reviewed based on an abuse of discretion standard." *State v. Gianakos*, 644 N.W.2d 409, 415 (Minn. 2002). "We will reverse for an abuse of discretion where we find a clearly erroneous conclusion that is against logic and the facts on record." *State v. Williams*, 842 N.W.2d 308, 313 (Minn. 2014) (quotation omitted). But the interpretation of a statute is a legal question that is reviewed de novo. *State v. R.H.B.*, 821 N.W.2d 817, 820 (Minn. 2012). And the determination of "whether a particular testimonial privilege or exception exists . . . is a question of law" that we review de novo. *Gianakos*, 644 N.W.2d at 415.

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2012). If the language of the statute is clear and free of all ambiguity, we apply the plain meaning of the statute. *State v. Leathers*, 799 N.W.2d 606, 608 (Minn. 2011). A statute is ambiguous when its language "is subject to more than one reasonable interpretation." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) (quotation omitted). "We construe statutes to effect their essential purpose but will not disregard a statute's clear language to pursue the spirit of the law." *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 123 (Minn. 2007).

The psychologist-client privilege statute states, in pertinent part:

> A registered nurse, psychologist, consulting psychologist, or licensed social worker engaged in a psychological or social assessment or treatment of an individual at the individual's request shall not, without the consent of the professional's client, be allowed to disclose any information or opinion based thereon which the professional has acquired in attending the client in a professional capacity, and which was necessary to enable the professional to act in that capacity.

Minn. Stat. § 595.02, subd. 1(g). To establish the existence of a psychologist-client privilege, the client must establish that "(1) a confidential psychologist-patient relationship existed between defendant and the psychologist, (2) during which the psychologist acquired information of the type contemplated by the privilege statute, (3) while attending the patient, and (4) which was necessary for diagnosis and treatment." *State v. Gullekson*, 383 N.W.2d 338, 340 (Minn. App. 1986) (citing *State v. Staat*, 291 Minn. 394, 399, 192 N.W.2d 192, 197 (1971)), *review denied* (Minn. May 16, 1986). "[T]he absence of one essential fact requisite to extending the privilege to a claimant is fatal [to the privilege claim]." *Staat*, 291 Minn. at 403, 192 N.W.2d at 198.

## A. Existence of a Psychologist-Client Relationship

Concerning the first disputed factor, whether a psychologist-client relationship existed, Expose contends that the state should be judicially estopped from now asserting that N.M. is not a psychologist, because it previously argued before the district court that N.M. should be treated as a licensed psychologist under the duty-to-warn statute. We need not determine whether judicial estoppel applies, however, because the undisputed

8

facts in the record show that a confidential psychologist-client relationship existed between N.M. and Expose that meets the requirements of the privilege.

The testimonial privilege applies to "[a] registered nurse, psychologist, consulting psychologist, or licensed social worker engaged in a psychological or social assessment or treatment of an individual." Minn. Stat. § 595.02, subd. 1(g). The section does not define "psychologist," and unlike the duty-to-warn statute, the testimonial privilege does not specifically include a licensing requirement.[3] Construing "psychologist" according to its "most natural and obvious usage," *see Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999), we note that the dictionary defines the term as "[a] person trained and educated to perform psychological research, testing, and therapy." *The American Heritage Dictionary* 1125 (4th ed. 2007). In addition, the term "psychological treatment" is best construed in harmony with Minnesota law that defines the "practice of psychology." *See* Minn. Stat. § 148.89, subd. 5 (2012). The practice of psychology includes, among other things, "counseling . . . and . . . treatment of: (i) mental and emotional disorder or disability; . . . (iii) disorders of habit or conduct; . . . [and] (vi) child, family, or relationship issues . . . ." *Id.*, subd. 5(4)(i), (iii), (vi).

With these definitions in mind, we conclude that N.M. functioned as a "psychologist" under the evidentiary privilege. When she counseled Expose for anger-management issues, she had a bachelor's degree in psychology, had completed the requirements of her master's degree program in clinical counseling and marriage and

---

[3] The duty-to-warn statute, by contrast, uses the term "licensee," Minn. Stat. § 148.975, subd. 2, which is defined to include "licensed psychologist" or a "licensed psychological practitioner." Minn. Stat. § 148.89, subd. 4 (2012).

family therapy, and was working as a mental-health practitioner under the guidance of a supervisor at Thad Wilderson & Associates, a mental-health clinic. In short, she meets the dictionary definition of a "person trained and educated to perform psychological . . . therapy," and she did, in fact, counsel Expose on managing his anger.

Even if N.M.'s professional background is somehow insufficient to establish that she is a "psychologist" for purposes of the privilege, N.M. held herself out as a psychologist and informed Expose that his information would be kept strictly confidential unless certain limited exceptions applied. Under circumstances similar to these, the psychologist-client privilege has been applied when a client makes a "reasonable, but mistaken, belief that a mental health counselor is a psychologist or licensed social worker." *See Speaker ex rel. Speaker v. Cnty. of San Bernardino*, 82 F. Supp. 2d 1105, 1112 (C.D. Cal. 2000). Similarly, courts have applied the attorney-client privilege when the client reasonably believed that an imposter was a lawyer. *See United States v. Mullen & Co.*, 776 F. Supp. 620, 621 (D. Mass. 1991) (dictum); *United States v. Tyler*, 745 F. Supp. 423, 425–26 (W.D. Mich. 1990); *United States v. Boffa*, 513 F. Supp. 517, 523–25 (D. Del. 1981).

In sum, because N.M. met the common understanding of a "psychologist" when she counseled Expose about his mental health, or, alternatively, the circumstances of their interactions allowed Expose to reasonably believe that N.M. was a psychologist or licensed social worker, we conclude that a psychologist-client relationship was formed.

**B. Necessity of Statements to Treatment**

The state next contends that the psychologist-client privilege should not apply because Expose did not show that his statements were "necessary" for N.M.'s treatment of him. Under the statute, the privilege applies to "information or opinion based thereon which the professional has acquired in attending the client in a professional capacity, and which was necessary to enable the professional to act in that capacity." Minn. Stat. § 595.02, subd. 1(g).

We decline the state's invitation to parse the dialog of a therapy session in this manner. The record shows that N.M. acquired information on Expose's thoughts toward D.P. as a result of her questioning him about his emotional state during a regularly scheduled therapy appointment for anger-management treatment in a mental-health clinic. Ordered to attend anger-management therapy by the judicial system, Expose was expected to fully participate in his therapy or risk failing his case plan. N.M. asked Expose questions about his anger, and he responded. Anger-management therapy necessarily involves talking about and working through angry thoughts and emotions. Notably, N.M. agreed that it is "harmful to the therapeutic process for the patient to have to hold back," and that a patient "should be able to tell [her] anything."

Similarly, when recognizing a federal psychotherapist evidentiary privilege, the United States Supreme Court explained, "Effective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Jaffee v. Redmond*, 518 U.S. 1, 10, 116 S. Ct. 1923, 1928 (1996). N.M.'s ability to help her clients is dependent

11

upon establishing "an atmosphere of confidence and trust" for her clients to receive "successful treatment." *See id.* We hold that, based on these facts, Expose established that his conversation with N.M. fell under the psychologist-client privilege statute and that it was a necessary part of effective anger-management treatment.

### III. Minnesota Law Contains No "Threats Exception" to the Statutory Psychologist-Client Privilege

The state asks this court to affirm the district court's ruling that Expose's threats are admissible because threats qualify "[a]s an exception to the privilege." Because section 595.02, subdivision 1(g), and other relevant laws do not contain a "threats exception," the district court's erroneous legal ruling is an abuse of discretion. *See Williams*, 842 N.W.2d at 313.

We note initially that the district court made no finding, and the state makes no claim now, that, for purposes of the privilege statute, Expose somehow "consented" to N.M.'s testimony. To be sure, the plain language of the privilege statute allows a psychologist to disclose information or opinion gained during therapy sessions with "the consent of the professional's client." Minn. Stat. § 595.02, subd. 1(g). And Expose did sign a "Client Rights and Responsibilities" document at the clinic before beginning therapy. That document stated that Expose had the right to have his personal information "treated as strictly confidential, unless: . . . There is sufficient reason to believe that a client may do bodily harm to self or others. In such a case, appropriate persons or agencies will be contacted in order to prevent such injury."

12

Critically, however, the clinic never warned Expose that his treating psychologist may disclose information gained during a therapy session not simply to a third party to prevent possible injury, but instead by testifying in a court of law to aid a later criminal prosecution based on Expose's statements. And no evidence was presented to show that Expose knew of the testimonial privilege that he purportedly consented to waive or that he intended to waive that privilege. *Cf. State v. Penkaty*, 708 N.W.2d 185, 204 (Minn. 2006) (applying the intentional relinquishment standard to the waiver of a testimonial privilege).

Because the issue of "consent" was not raised by the state or supported by the record, we next examine whether any other exception to the testimonial privilege may be found in section 592.02 or elsewhere in Minnesota law. "[T]he rules of statutory interpretation forbid us from adding words to a statute that the Legislature omitted." *State v. Garcia-Gutierrez*, 844 N.W.2d 519, 523 (Minn. 2014). The plain language of section 595.02 shows that the legislature knows how to create exceptions to the psychologist-client privilege when it so desires. In fact, an entire subdivision in the psychologist-client privilege statute sets forth "exceptions." Minn. Stat. § 595.02, subd. 2 (2012). Subdivisions 2(a) and 2(b) create exceptions to the privilege for evidence of child abuse and neglect, including an exception that applies to criminal proceedings. *Id.*, subds. 2(a), (b). Notably absent from the "exceptions" subdivision is any reference to threats by patients.

In addition, the legislature created another exception to the psychologist-client privilege in statutes pertaining to civil-commitment proceedings, specifically providing

13

that "[a]ny privilege otherwise existing between . . . patient and psychologist . . . is waived as to any . . . psychologist . . . who provides information with respect to a patient." Minn. Stat. § 253B.23, subd. 4 (2012). No similar language waiving the psychologist-client privilege is present in any other Minnesota law, including Minnesota's duty-to-warn statute. *See* Minn. Stat. § 148.975, subd. 2.

The duty-to-warn statute requires a licensee to "take reasonable precautions to provide protection" to a potential victim of violent behavior "only when a client . . . has communicated to the licensee a specific, serious threat of physical violence against a specific, clearly identified or identifiable potential victim." *Id.* "'Reasonable efforts' means communicating the . . . threat to the potential victim and if unable to make contact with the potential victim, communicating the serious, specific threat to the law enforcement agency closest to the potential victim or the client." *Id.*, subd. 1(c) (2012).

Notably, the duty-to-warn statute makes no reference to a psychologist later testifying in court. And it does not contain any language suggesting that it creates an exception to the privilege, much less the explicit language used in the commitment statute that waives "[a]ny privilege otherwise existing . . . between patient and psychologist." Accordingly, we conclude that the legislature did not intend for the limited disclosure required by the duty-to-warn statute to create an exception to the psychologist-client privilege.

Given that the legislature has the power to create exceptions to the statutory privilege and has used that power in the past to limit the psychologist-client privilege, the absence of a "threats exception" in the privilege statute, or a waiver of the privilege in

14

any other statutory section, shows that the legislature did not intend for a "threats exception" to exist.[4] Because the plain language of the statute governs, we need not consider the policy arguments advanced by the state to support a "threats exception" to the psychologist-client privilege.

In reaching our conclusion that the psychologist-client privilege applies here, we do not minimize the harm that D.P. suffered after she learned of Expose's alarming statements. We also are mindful that application of the privilege is "an impediment to the ascertainment of truth." *Staat*, 291 Minn. at 397, 192 N.W.2d at 196. Nevertheless, where the legislature has balanced competing and weighty policy concerns, it is our duty to apply the privilege to fulfill its purpose: to safeguard and to promote confidential communications that enhance meaningful treatment for those suffering from mental or emotional problems. *See id.* (discussing the purpose of the physician-patient privilege). "The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." *Jaffee*, 518 U.S. at 11, 116 S. Ct. at 1929.

## IV.   Admission of D.P.'s Testimony Was Not Harmless Error

Finally, the state contends that, even if we do not recognize a "threats exception" to the psychologist-client privilege, we should affirm Expose's conviction based on D.P.'s testimony, which the state now contends on appeal is admissible through the residual hearsay exception. Minn. R. Evid. 807. D.P. testified at trial that N.M. warned her that Expose had threatened to harm her, and the state argues that D.P.'s testimony is

---

[4]   We note that a majority of states "have no such [threats] exception as part of their evidence jurisprudence." *United States v. Hayes*, 227 F.3d 578, 585 (6th Cir. 2000).

sufficient to sustain Expose's conviction. But use of the residual hearsay exception cannot overcome the separate basis for inadmissibility created by the psychologist-client privilege. Because Expose's statements to N.M. were privileged, the privilege belongs to Expose and he did not waive it, and no "threats exception" exists, the admission of Expose's statements through any witness was erroneous. And no question exists that the statements substantially influenced the jury's decision to convict Expose. *See State v. DeShay*, 669 N.W.2d 878, 888 (Minn. 2003).

D.P. learned about Expose's threats because N.M. believed that she had a duty to warn D.P. under Minnesota law. The purpose of the duty-to-warn statute, however, is to protect a third-person's personal safety, not to facilitate criminal prosecution; it does not pertain to the admissibility of testimony. *See United States v. Ghane*, 673 F.3d 771, 786 (8th Cir. 2012) ("'[C]ompliance with the professional duty to protect does not imply a duty to testify against a patient in criminal proceedings . . . and such testimony is privileged and inadmissible if a patient properly asserts the psychotherapist/patient privilege.'" (quotation omitted)). As discussed above, nothing in the language of the duty-to-warn statute shows that the legislature intended for it to limit the psychologist-client privilege statute by creating a "threats exception" to the privilege. And allowing every person warned under the duty-to-warn statute to testify under the residual hearsay exception would undermine the purpose of the psychologist-client privilege statute. *Cf. State v. Gillespie*, 710 N.W.2d 289, 297 (Minn. App. 2006) ("The [physician-patient] privilege is solely for the protection of the patient and is designed to promote health and not truth." (quotation omitted)), *review denied* (Minn. May 16, 2006).

In sum, the duty-to-warn statute does not permit D.P. to testify to Expose's confidential communications to N.M. Expose did not waive the privilege to the substance of his communications with N.M. during his counseling session. Because Expose's communications to N.M. were privileged, neither N.M. nor D.P. can testify about them. Without N.M. or D.P.'s testimony, the jury likely would not have found Expose guilty. We therefore reverse and remand.

## D E C I S I O N

Because Expose's communications with N.M. met the requirements of Minnesota's psychologist-client privilege statute, a "threats exception" does not exist in Minnesota law, and admission of N.M.'s testimony was not harmless, we reverse Expose's conviction and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**

17