*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2316**

State of Minnesota,
Respondent,

vs.

Thomas Alan Boos,
Appellant.

**Filed August 18, 2014
Affirmed
Smith, Judge**

Winona County District Court
File No. 85-CR-10-176

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Karin L. Sonneman, Winona County Attorney, Kevin P. O'Laughlin, Assistant County Attorney, Winona, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hudson, Presiding Judge; Halbrooks, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH**, Judge

We affirm the district court's revocation of appellant's probation because clear and convincing evidence supports the district court's finding that appellant violated his

probation conditions, because the district court appropriately considered whether confinement was necessary to protect the public, and because the district court's erroneous compulsion of privileged testimony did not affect appellant's substantial rights.

**FACTS**

Between 2009 and 2010, appellant Thomas Alan Boos sexually touched his 13-year-old stepdaughter several times. Respondent State of Minnesota charged Boos with six counts of second-degree criminal sexual conduct. Boos pleaded guilty to one count of second-degree criminal sexual conduct and the remaining counts were dismissed. In October 2010, the district court found that Boos was amenable to probation and it granted the parties' joint motion that execution of the presumptive 90-month sentence be stayed. It placed Boos on probation for 25 years. As conditions of probation, the district court ordered Boos to "enter into and make progress and successfully complete sex offender education treatment," refrain from the use, possession, or purchase of pornography or sexually explicit materials, including "sexual phone text conversations," and to remain law-abiding. The district court warned him that "even non-criminal conduct could result in the revocation of [his] probation," and it emphasized that "[e]ven if [he does not] break the law, if [he does] something that [he is] not supposed to do on probation . . . [he] could end up serving that 90 months."

In September 2012, the department of corrections recommended that the district court revoke Boos's probation, alleging that Boos had "been discharged unsuccessfully from treatment" and that he had "used internet pornography." Boos admitted the violations. Ultimately, in November 2012, the district court found that Boos "may still

2

be amenable . . . to probation," and it allowed him to remain on probation "under the same terms and conditions that were previously established," with the addition of jail time and a no-internet rule. It warned him, however, that "this [would] probably be [his] last go around given that this is really, really serious." It also required that Boos obtain entry into a new treatment program and that he must "successfully complete that program."

In June 2013, the department of corrections again moved the district court to revoke Boos's probation, alleging that he failed to remain in good behavior, that he was discharged unsuccessfully from the sex offender treatment program, and that he had sent sexually explicit text messages to his neighbor. Boos denied the allegations.

At the probation revocation hearing, the district court received testimony from Boos's neighbor. She testified that, about three weeks earlier, she had been in the hallway of their apartment building, upset because she had lost her cell phone. When she saw Boos, she asked him to help with her search by calling her phone from his phone. She testified that Boos "offered a hug" and "as he hugged [her] when he pulled away, he touched [her] left breast," causing her to feel "[v]ery uncomfortable." She also testified that, after locating her phone, she received "quite a few text messages" from Boos's phone. She testified that, in the text messages, Boos began by "apologizing for the hug," but immediately moved on to state that he was "a convicted sex offender sex addict," and that he "likes to watch porn." The neighbor testified that "the text messages continued and continued," and she responded only that she was "in a relationship" and did not want Boos calling her. She testified that Boos continued to send text messages that had "a

3

sexual tone," suggesting that she "get rid of the boyfriend" so he could "take his place" and saying "[s]omething about we could live together." He asked the neighbor to visit him to give him a hug. She testified that she called a male friend, who came over and called Boos from her phone. The friend "warned [Boos] to stay away" and the text messages ceased.

The neighbor deleted the text messages after showing them to a police officer and to Boos's probation agent, both of whom testified. The probation agent created a rough transcript of some of the messages.[1] The police officer testified that he spoke with Boos, who admitted that he sent the text messages and that the messages were sexual in nature. The officer also testified that Boos said "that he had f—ked up and would now be going to prison."

Boos's therapist also testified. Before questioning her, the prosecutor moved the district court to "instruct the witness that she is compelled to answer the questions." He explained that, otherwise, the therapist "couldn't talk to [him]" because she was "a psychological professional" and the county attorney's office did not have a release of therapist-patient privilege. He noted, however, that the probation office had a release and that it had allowed him to view the therapist's report. The district court granted the motion, and Boos did not object.

---

[1] Boos objected to the admission of the probation agent's transcript of the text messages, but the district court overruled the objection, ruling that the transcript was not hearsay and was the best evidence available. Although Boos implies that this admission was improper, he does not appeal the district court's evidentiary ruling.

The therapist testified that Boos had not successfully completed the sex offender treatment program. She testified that he had "violated his treatment agreement" by failing to "be honest and accept full responsibility for [his] offenses and behaviors" and by failing to "avoid situations and behaviors that [would] place [him] at high risk of reoffending." Specifically, she stated that although Boos had reported the incident with his neighbor to his treatment group, as he was obliged to do by the terms of his treatment agreement, he only admitted that he had intentionally touched his neighbor's breast; he failed to report the sexual text messages that followed. The therapist opined that "because there was a whole lot that he did not disclose," he "was not honest" about it. She testifieed that the treatment program would not readmit Boos, stating that his treatment history "is evidence that he is not likely to succeed in the community at this point."

The district court found that the state had proved by clear and convincing evidence that Boos had violated the conditions of his probation. First, the state established that he had "uninvited sexual contact" with his neighbor, thereby failing to remain law-abiding and of good behavior. Second, the state established that Boos "lies in treatment which led to his unsuccessful discharge from that treatment." Finally, the state established that Boos "participate[d] in sexually explicit text messaging." Based on its finding that Boos "basically commit[ed] another offense" when he touched his neighbor's breast and the fact that Boos had been unsuccessfully discharged from two sex offender treatment programs, the district court concluded that Boos is not amenable to treatment and that

5

"confinement is necessary to protect the public from further criminal sexual activity." Accordingly, it revoked Boos's probation and executed his 90-month prison sentence.

## DECISION

### I.

Boos contends that revocation of his probation is not justified because he did not violate any condition of his probation. We review a district court's decision to revoke probation for an abuse of discretion. *State v. Austin*, 295 N.W.2d 246, 249-50 (Minn. 1980). But we review de novo whether a district court made findings sufficient to support a probation revocation. *State v. Modtland*, 695 N.W.2d 602, 605 (Minn. 2005). To support a probation revocation, a district court must find clear and convincing evidence that a probationer violated a condition of his probation. *See* Minn. R. Crim. P. 27.04, subds. 2(1)(c)b., 3. Any violation must relate to "a condition actually imposed by the [district] court." *State v. Ornelas*, 675 N.W.2d 74, 80 (Minn. 2004).

Boos challenges the sufficiency of the evidence regarding each of the three bases cited by the district court when it revoked his probation. Violation of a single condition may alone be sufficient to support a probation revocation. *See Austin*, 295 N.W.2d at 250 (requiring the probationer be notified of "the specific *condition or conditions* that were violated" (emphasis added)).

### A.     *Failure to Remain Law-Abiding*

Boos argues that his touching of his neighbor's breast cannot support a finding that he failed to remain law-abiding because he was not charged with an offense. By failing to raise the argument at his revocation hearing, Boos waived it. *See State v.*

6

*Spanyard*, 358 N.W.2d 125, 127 (Minn. App. 1984), *review denied* (Minn. Feb. 27, 1985). We therefore decline to consider it.

### B. Failure to Successfully Complete Sex Offender Treatment

Boos argues that revocation of his probation was not justified on the basis of failure to complete sex offender treatment because the district court did not impose a deadline and he was making progress. He cites two unpublished opinions of this court as persuasive authority supporting his contention that the district court's failure to set a time limit bars revocation of probation based on a failure to complete treatment, provided that sufficient time remains in the probationary period to complete treatment. But the cases Boos cites are unpersuasive because they are easily distinguishable.

In *State v. Davisson*, we reversed the probation revocation of a probationer who waited 18 months to begin to follow through on a probation condition requiring him to obtain a psychological evaluation. *See* 1998 WL 747135, at \*1 (Minn. App. Oct. 27, 1998). We found that "[w]ithout a deadline or some guideline, the evidence does not clearly and convincingly establish that appellant had notice or warning of when his performance was due." *Id.* at \*2. Similarly, in *State v. Bruce*, we reversed a probation revocation where the probationer had been discharged from a sex offender treatment program because he was unable to make payments, but where the district court had set no deadline and where the probationer had attempted to enroll in three alternative programs. No. A07-600, 2008 WL 2102893, at \*1-2 (Minn. App. May 13, 2008).

Here, Boos did not delay seeking treatment but rather was unsuccessfully discharged from two sex offender treatment programs, the last due to his failure to be

7

honest during his treatment. The fact that his discharge was due to his misconduct during treatment distinguishes this case from both *Davisson* and *Bruce*. The facts here are more similar to those in *State v. Syas*, where we found *Davisson* and *Bruce* unpersuasive when the patient's own misconduct was the reason for his failure to complete treatment. *See* No. A10-73, 2010 WL 3119495, at *2-3 (Minn. App. Aug. 10, 2010), *review denied* (Minn. Oct. 19, 2010). Accordingly, we conclude that district court's finding that Boos violated the treatment requirement of his probation is sufficient to support the probation revocation.

### C.     *Usage of Sexual Text Messaging*

Boos asserts that the district court's finding that he sent sexual text messages cannot support his probation revocation because it does not relate to any probation condition that was actually imposed upon him. He argues that his probation conditions only prohibited him from consuming pornography and engaging in sexual "conversations" and, since the text messages were not pornographic and since his neighbor did not engage in conversation with him, he did not violate the condition. But Boos cites no authority to support his contention that only the use of pictures or an extended exchange between two persons could support the district court's finding that he violated the condition of his probation. The district court also received testimony from Boos's neighbor, his probation officer, and a police officer that the content of the text messages was "sexual." The messages referenced Boos's desire to consume pornography and then sought to engage his neighbor in sexual conversation.

8

Most importantly, Boos's awareness that he was violating the condition on his probation is confirmed by his statement to the police officer that he had "f—ked up and would now be going to prison." As such, the conduct can support a finding that Boos did violate the terms of his probation. *Cf. Austin*, 295 N.W.2d at 251 (concluding that revocation was warranted where "[a] reasonable probationer would have understood" the conduct was prohibited). Therefore, the district court's finding that Boos violated the terms of his probation by sending sexual text messages is not erroneous.

## II.

Boos also argues that the district court failed to adequately weigh public policies favoring probation when it revoked his probation. Before revoking probation, a district court must "find that need for confinement outweighs the policies favoring probation." *Austin*, 295 N.W.2d at 250. "The purpose of probation is rehabilitation and revocation should be used only as a last resort when treatment has failed." *Id.* "The decision to revoke cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he . . . cannot be counted on to avoid antisocial activity." *Id.* at 251 (quotations omitted). When weighing the need for confinement, a district court considers any of three alternative justifications for confinement: (1) whether "confinement is necessary to protect the public from further criminal activity by the offender;" (2) whether treatment could be most effectively provided while in confinement; or (3) whether "it would unduly depreciate the seriousness of the violation if probation were not revoked." *Modtland*, 695 N.W.2d at 607 (quotations omitted).

Boos asserts that "[t]his case essentially involved a choice between treatment and confinement with the mere possibility of treatment," but this misrepresents the district court's consideration of the probation revocation alternatives. Rather than focusing solely on one justification for preferring confinement over the continuation of Boos's probation, the district court considered all three, finding that each provided support for revoking Boos's probation. The district court found that the reasons underlying Boos's termination from his second treatment program—his conduct towards his neighbor and his dishonesty about the text messages—supports a finding that confinement is necessary to protect the public from further criminal activity. It also found that Boos's failures in two successive treatment programs justifies the conclusion that further treatment is most likely to be provided only while Boos is in confinement. And it found that Boos's failures to successfully complete treatment are a serious violation of his probation conditions because they severely undermine the district court's original justification for staying execution of Boos's sentence. Because any of these considerations would be adequate to fulfill the district court's obligation to weigh public policies favoring probation against the need for Boos's confinement, the district court's consideration of them was sufficient.

Boos also briefly asserts that the district court failed to consider whether his probation violations were intentional or inexcusable. A district court is required to find that a probationer's violations were intentional or inexcusable before revoking probation. *Modtland*, 695 N.W.2d at 606. But the record supports such a finding, and Boos does not substantively challenge it.

**III.**

Boos argues that the district court erred by granting the state's motion to compel his therapist to testify, asserting that this is in violation of the therapist-patient privilege. Because Boos failed to object, the issue is waived. *See Muller v. Rogers*, 534 N.W.2d 724, 727 (Minn. App. 1995) (noting that a defendant may waive a privilege claim by failing to assert it); *see also Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (noting that appellate courts generally refuse to consider issues "not raised before the district court").

But we have discretion to address a waived privilege claim under a plain-error standard of review. *See, e.g.*, *State v. Penkaty*, 708 N.W.2d 185, 204 (Minn. 2006); *see also* Minn. R. Crim. P. 31.02. To prevail under this standard, an appellant must establish that (1) the district court erred; (2) the error was plain; and (3) the error affected his substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Once this threshold is met, we may at our discretion redress the error "to ensure fairness and the integrity of the judicial proceedings." *Id.* at 742.

"An error is 'plain' if it is clear or obvious," such as when it "contravenes case law, a rule, or a standard of conduct." *State v. Cao*, 788 N.W.2d 710, 715 (Minn. 2010). The legislature has directed that, without the client's consent, therapists are prohibited from disclosing "any information or opinion based" on their professional assessments or treatments. Minn. Stat. § 595.02, subd. 1(g) (2012). This prohibition extends to marriage and family therapists. *See* Minn. Stat. § 148B.39 (2012). A patient may consent to disclosure by signing a waiver. *See id.*(5). But a client's awareness that a therapist may

11

disclose his statements to one person does not constitute consent for the therapist to testify about them in court. *See State v. Expose*, ___ N.W.2d ___, ___, 2014 WL 3396262, at *6-7 (Minn. App. July 14, 2014) (holding that a client's awareness of a therapist's duty to warn law enforcement about threats made during treatment did not authorize the therapist to testify about the threatening statements in a criminal proceeding).

Here, the state acknowledged at the hearing that Boos had not signed a waiver authorizing his therapist to discuss his therapy with anyone other than his probation officer. The fact that the state moved the district court to compel her testimony reveals that the state and the district court were aware that the therapist was bound by therapist-client privilege in the absence of Boos's waiver. Granting the motion clearly contradicted the privilege statutes.

Nonetheless, the error did not affect Boos's substantial rights. The state could have introduced the same testimony through Boos's probation officer. *See State v. Johnson*, 679 N.W.2d 169, 174 (Minn. App. 2004) (allowing admission of hearsay evidence in probation revocation proceedings). Also, the terms of Boos's probation required him to consent to all releases of information directed by his probation officer. Had the state ordered Boos to sign a release rather than ask the district court to compel the therapist's testimony, Boos would have been required to do so. If Boos had refused, it would have constituted an additional violation of his probation conditions, providing an additional justification for revoking his probation. *Cf. United States v. Knights*, 534 U.S. 112, 119, 122 S. Ct. 587, 591 (2001) ("Inherent in the very nature of probation is that

12

probationers do not enjoy the absolute liberty to which every citizen is entitled. Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." (quotation omitted)). Accordingly, we conclude that the error of compelling the therapist to testify did not affect Boos's substantial rights.

**Affirmed.**