STATE OF MINNESOTA

IN SUPREME COURT

A13-1285

Court of Appeals                                                                                   Stras, J.
                                                        Took no part, Wright and Hudson, JJ.

State of Minnesota,

                    Appellant,

vs.                                                                       Filed:   December 9, 2015
                                                                           Office of Appellate Courts
Jerry Expose, Jr.,

                    Respondent.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant Ramsey County
Attorney, Saint Paul, Minnesota, for appellant.

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson,
Assistant State Public Defender, and Ted Sampsell-Jones, Special Assistant State Public
Defender, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

1.      Objections based on a statutory privilege that cannot be resolved without a

trial on the merits are not subject to forfeiture under Minn. R. Crim. P. 10.01, subd. 2.

2.      There is no "threats exception" to Minnesota's therapist-client privilege,

Minn. Stat. § 595.02, subd. 1(g) (2014).

1

3.	The therapist-client privilege does not apply to the testimony of third parties who learn of confidential information shared by a client with his or her therapist.

Affirmed as modified and remanded.

O P I N I O N

STRAS, Justice.

This case requires us to determine whether the therapist-client privilege, which prohibits therapists from disclosing information or opinions in court that they acquired from their clients in a professional capacity, contains an exception for threatening statements. The district court concluded that the privilege does not apply to "statements of imminent threat of harm." The court of appeals reversed, holding that the statute codifying the privilege, Minn. Stat. § 595.02, subd. 1(g) (2014), does not contain an exception for threats. We agree with the court of appeals that the statute does not contain a "threats exception," but disagree that the privilege extends to third parties.

I.

As a condition of his probation for a prior conviction, respondent Jerry Expose, Jr. was required to attend anger-management therapy sessions with N.M., a mental-health practitioner. During one session, Expose became upset and made a threatening statement about D.P., a caseworker assigned to an ongoing child-protection case involving Expose's children. Expose said that D.P. had told him recently that his continued noncompliance with a requirement of his case plan would delay the commencement of unsupervised visits with his children. Expose then became visibly angry and said that

he felt that [D.P.] was a barrier to him getting his kids back and if court—his future court date did not go the right way that he would break her back, and then if he could not get to her he would call—he'd just have to make a couple phone calls and he can have someone else do it if he couldn't get to her.

N.M. responded to the threatening statement by informing Expose that she was a mandated reporter, to which he replied, "I don't give a f--k." N.M. then "proceeded to help him de-escalate and calm down," but Expose made additional statements about D.P., including that "[e]verybody has to go to their car at some point."

Based on her training, N.M. determined that Expose's statements were not idle threats. Instead, she concluded that Expose had made specific threats of physical violence against an identifiable person that triggered her statutory duty to warn. *See* Minn. Stat. § 148.975 (2014). To discharge the duty, N.M. reported Expose's statements to her supervisor, D.P., and the police.

The State charged Expose with one count of making terroristic threats, Minn. Stat. § 609.713, subd. 1 (2014). Before trial, Expose brought a motion in limine to exclude any testimony by N.M. about whether she had a statutory duty to warn, in light of the fact that N.M. was under the supervision of another psychologist and had not yet received her license when Expose made the allegedly threatening statements. *See* Minn. Stat. §§ 148.975, subd. 2 (limiting the duty to warn to "licensees"), 148.89, subd. 4 (defining "licensee") (2014). The district court denied Expose's motion.

At trial, the State called N.M. as its first witness. Expose again objected to N.M.'s testimony, this time on the ground that the therapist-client privilege prohibited N.M. from testifying without his consent. The district court denied Expose's motion, concluding

3

that "the privilege does not apply to statements of imminent threat of harm . . . to a person or persons." According to the court, the statements were admissible "[a]s an exception to the privilege."

The State called two other witnesses. D.P. testified that N.M. told her what Expose had said during the therapy session. Expose repeatedly objected to D.P.'s testimony as inadmissible hearsay, but the district court overruled his objections. A member of the "Critical Incident Team" within D.P.'s agency also testified, outlining the steps he took to address the threat. He clarified that D.P. told him about the alleged threats and that his involvement was limited to ensuring D.P.'s safety.

The jury found Expose guilty of making terroristic threats, and the district court sentenced him to a stayed term of 28 months in prison. Expose appealed his conviction, arguing that N.M.'s testimony was inadmissible under the therapist-client privilege, Minn. Stat. § 595.02, subd. 1(g).

The court of appeals agreed and reversed Expose's conviction. *State v. Expose*, 849 N.W.2d 427 (Minn. App. 2014). As a threshold matter, the court rejected the State's argument that Expose had failed to timely object to N.M.'s testimony. *See id.* at 431-32. The court next held that the therapist-client privilege prohibited N.M. from testifying about information she learned during Expose's therapy sessions, including the content of Expose's alleged threats. *Id.* at 432-34. In doing so, the court rejected the State's argument that the therapist-client privilege includes a "threats exception." *Id.* at 434-36. The court further held that the error in admitting N.M.'s testimony was prejudicial because Expose's privileged statements were inadmissible through the testimony of any

4

witness, including D.P., even though the statute codifying the therapist-client privilege only explicitly addresses disclosures by therapists. *Id.* at 436-37. Accordingly, because no admissible evidence at trial established the content of Expose's alleged threats, the court reversed Expose's conviction and remanded the case to the district court for further proceedings. *Id.* at 437.

We granted review of three issues: (1) whether Expose timely objected to N.M.'s testimony; (2) whether the therapist-client privilege is subject to a "threats exception"; and (3) whether the therapist-client privilege extends to the testimony of third parties.

## II.

We begin with the preliminary question of whether Expose forfeited his objection when he failed, prior to trial, to assert the therapist-client privilege as a ground for the exclusion of N.M.'s testimony. The State's forfeiture argument rests on Minn. R. Crim. P. 10.01, subd. 2, which states:

> [d]efenses, objections, issues, or requests that can be determined without trial on the merits must be made before trial by a motion to dismiss or to grant appropriate relief. The motion must include all defenses, objections, issues, and requests then available. Failure to include any of them in the motion constitutes waiver . . . .

According to the State, Rule 10.01 required Expose to file a motion raising the therapist-client privilege before the trial began.

By its terms, Rule 10.01 covers only matters that "can be determined without trial on the merits," which includes challenges to the adequacy of a complaint or an indictment. *See, e.g.*, *State v. Sahr*, 812 N.W.2d 83, 87 (Minn. 2012) (motion to dismiss a complaint); *State v. Wren*, 738 N.W.2d 378, 395 (Minn. 2007) (objection to an

5

indictment); *State v. Stagg*, 342 N.W.2d 124, 126 (Minn. 1984) (challenge to the adequacy of a complaint). Such pretrial challenges, because they can be determined based solely on the pleadings, are subject to Rule 10.01.

The nature of the "objection" in this case was different from cases in which we have applied Rule 10.01. The therapist-client privilege, as defined by Minn. Stat. § 595.02, subd. 1(g), requires a district court to assess the admissibility of testimony based on its content. When a therapist is asked to disclose "information or opinion[s]" that the "professional has acquired in attending the client in a professional capacity," the privilege applies. *Id*. However, the privilege does not create a blanket exclusion of all therapist testimony. Testimony about other matters, including any actions taken by a therapist after a session, would be admissible because it would not qualify as either "information or [an] opinion." Here, for example, the content of any "information" N.M. acquired during Expose's therapy sessions would be subject to the privilege, but the privilege did not prevent N.M. from testifying to the fact that she called D.P. after Expose's session. Determining whether a therapist's testimony is privileged necessarily involves a fact-dependent inquiry that may require a trial on the merits.[1]

In fact, it would have been speculative for Expose to have objected before the trial to hypothetical questions that the State may never have intended to ask N.M., and it

---

[1] For example, a district court may have to determine whether the therapist actually acquired the information or opinion while attending to the client in a professional capacity. Indeed, there may be instances in which a therapist has acquired the information independently through other means, such as by overhearing a conversation between a client and a third party.

6

would have been difficult for the district court to have ruled on the application of the privilege to N.M.'s testimony, the content of which it was not yet aware. Accordingly, Rule 10.01 does not *require* a criminal defendant to object preemptively to testimony based on the assertion of a privilege, the determination of which may require a more complete factual record.[2]

III.

We turn now to the central question in this case, which is whether the therapist-client privilege contains a "threats exception." The applicability of an evidentiary privilege is a question of law that we review de novo. *State v. Heaney*, 689 N.W.2d 168, 171 (Minn. 2004).

The therapist-client privilege provides that every person may testify in any case except

> (g) A registered nurse, psychologist, consulting psychologist, or licensed social worker engaged in a psychological or social assessment or treatment of an individual at the individual's request shall not, without the consent of the professional's client, be allowed to disclose any information or opinion based thereon which the professional has acquired in attending the client in a professional capacity, and which was necessary to enable the professional to act in that capacity.

Minn. Stat. § 595.02, subd. 1(g). The statute contains two exceptions, both of which allow testimony by a therapist in certain cases involving the neglect or abuse of a minor. *Id.*, subd. 2(a) (stating that the privilege is inapplicable to "testimony, records, or other

---

[2] We do not suggest that a criminal defendant may never make the therapist-client privilege the subject of a pretrial motion, only that a defendant does not forfeit the right to object to specific testimony at trial by failing to make a pretrial objection.

evidence relating to the abuse or neglect of a minor" in certain types of civil proceedings); subd. 2(b) (declaring that the privilege does not apply to "criminal proceedings arising out of the neglect or physical or sexual abuse of a minor"). In addition, certain "out-of-court statement[s] made by a child under the age of ten years old or a person who is mentally impaired" are admissible, even through the testimony of a therapist or other professional, if the statements allege, explain, deny, or describe "any act of sexual contact or penetration" against the child or mentally-impaired individual and certain other conditions are met. *See id.*, subd. 3. There is, however, no explicit exception for threatening statements.

The State argues that we should recognize a "threats exception" in light of another statute, which places a duty to warn on psychologists. The statute in question, Minn. Stat. § 148.975, immunizes "licensees," which include psychologists, from "monetary liability" and "cause[s] of action" arising out of the "failure to predict, warn of, or take reasonable precautions to provide protection from, a client's violent behavior," unless the psychologist has a "duty to warn." Minn. Stat. § 148.975, subd. 3. According to the statute, the duty to warn

> arises only when a client or other person has communicated to the licensee a specific, serious threat of physical violence against a specific, clearly identified or identifiable potential victim. If a duty to warn arises, the duty is discharged by the licensee if reasonable efforts . . . are made to communicate the threat.

*Id.*, subd. 2. A psychologist discharges the duty to warn through "reasonable efforts" to "communicat[e] the serious, specific threat to the potential victim and if unable to make

8

contact with the potential victim, [to] communicat[e] the serious, specific threat to the law enforcement agency closest to the potential victim or the client." *Id.*, subd. 1(c).

The duty-to-warn statute does not mention the therapist-client privilege statute. According to the State, however, the two statutes are incompatible with one another because they create conflicting obligations for psychologists. The State urges us to construe the duty-to-warn statute as an exception to the therapist-client privilege. We decline the State's invitation to create a new, implied exception to the therapist-client privilege because the duty-to-warn statute and the therapist-client privilege statute address distinct problems and apply in different circumstances.

The duty-to-warn statute creates a discrete duty for psychologists to warn a "clearly identified or identifiable potential victim" of a "specific, serious threat of physical violence." Minn. Stat. § 148.975, subd. 2. The duty imposed by the statute is "discharged" once the threat is communicated to the potential victim or, if the potential victim cannot be contacted, the "law enforcement agency closest to the victim." *Id.*, subd. 1(c). The duty-to-warn statute says nothing about a psychologist's duties of confidence to the client once the psychologist has discharged the duty to warn, including whether the psychologist may testify about confidential matters in court. *See* Minn. R. 7200.4700 (2013) (addressing a psychologist's duty of confidence).

The therapist-client privilege statute, in contrast, is an evidentiary statute that addresses when, and under what circumstances, therapists are competent to testify about "information or opinion[s] . . . the professional has acquired in attending to the client." Minn. Stat. § 595.02, subd. 1(g). Unlike the duty-to-warn statute, it does not create any

9

affirmative duties for a psychologist or other mental-health professional, but rather simply creates an exception to the general rule that every witness is presumed to be competent to testify in court. As the facts of this case illustrate, a psychologist can comply with the duty to disclose created by the duty-to-warn statute and still be incompetent to testify in court about the information the psychologist has disclosed. There is, in other words, no conflict between the requirements of the two statutes.

Moreover, the State's incompatibility theory is undermined by the fact that, when the Legislature has created an exception to the therapist-client privilege in other statutes, it has done so by explicitly referencing the therapist-client privilege statute. For example, a statute dealing with child neglect and sexual or physical abuse of minors makes clear that "no evidence relating to the neglect or abuse of a child . . . shall be excluded . . . on the grounds of privilege set forth in section 595.02, subdivision 1, paragraph (a), (d), or (g)." Minn. Stat. § 626.556, subd. 8 (2014). Similarly, in civil-commitment proceedings, "any privilege" between "patient and psychologist" is waived when the psychologist "provides information with respect to a patient pursuant to any provision of this chapter." Minn. Stat. § 253B.23, subd. 4 (2014).

These examples, as well as the exceptions found in the therapist-client privilege statute itself noted above, demonstrate that the Legislature knows how to create an exception to the therapist-client privilege when it wishes to do so. It has not done so here. The inference to be drawn from the Legislature's decision to create exceptions to the therapist-client privilege in some statutes, but not others, is that it did not intend to create an exception to the privilege in those statutes that do not mention the privilege,

including the duty-to-warn statute. *Cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62-63 (2006) ("[T]he question is whether Congress intended its different words to make a legal difference. We normally presume that, where words differ as they differ here, Congress acts intentionally and purposely in the disparate inclusion or exclusion."). After all, it is axiomatic that we cannot "add words or phrases to an unambiguous statute," *County of Dakota v. Cameron*, 839 N.W.2d 700, 709 (Minn. 2013), and the State makes no claim that the duty-to-warn statute is ambiguous. *See City of Brainerd v. Brainerd Invs. P'ship*, 827 N.W.2d 752, 756 (Minn. 2013) (applying a similar line of reasoning).

Alternatively, the State argues that we should construe the duty-to-warn statute as an implicit exception to the therapist-client privilege under our "inherent authority" to promulgate rules of evidence, even if neither statute supports such a reading. To be sure, we have the authority to establish and amend the rules of evidence. *See* Minn. Stat. § 480.0591, subd. 1 (2014). But under the grant of authority from the Legislature, the rules of evidence may not "abridge, enlarge, or modify the substantive rights of any person," *id.*, and we specifically lack the power to "promulgate rules of evidence which conflict, modify, or supersede" statutory privileges, *id.*, subd. 6(1) (2014).

The Minnesota Rules of Evidence contain provisions that are consistent with the Legislature's limited grant of authority. In particular, Rule 501 states that nothing in the rules "shall be deemed to modify, or supersede existing law relating to . . . privilege," and Rule 601 states that, "except as otherwise provided . . . the competency of a witness to give testimony shall be determined in accordance with law." We have also recognized

11

that privileges are different from other evidentiary rules over which we exercise rulemaking power. As we have stated, "[p]rivileges are not like other rules of evidence and hold a unique place in the law," because they have a "substantive component." *State v. Heaney*, 689 N.W.2d 168, 174 (Minn. 2004); *see also State v. Castillo-Alvarez*, 836 N.W.2d 527, 539 (Minn. 2013) (recognizing that the recording requirement under *State v. Scales*, 518 N.W.2d 587 (Minn. 1994), "like the privilege at issue in *Heaney*[,] . . . has both a procedural and substantive purpose"). Accordingly, we reject the State's contention that we have the authority to create an exception to the therapist-client privilege.

In summary, the therapist-client privilege statute lacks a "threats exception," either by implication from the duty-to-warn statute or under our authority to promulgate rules of evidence. The district court therefore abused its discretion when it allowed N.M. to testify about Expose's allegedly threatening statements without his consent.

IV.

Having concluded that the district court erred in admitting N.M.'s testimony about the content of Expose's statements, we must next assess whether the error was harmless. The court of appeals determined that it could not affirm Expose's conviction, even though the jury also heard about Expose's statements from D.P., who learned of the alleged threats from her telephone conversation with N.M. *State v. Expose*, 849 N.W.2d 427, 436-37 (Minn. App. 2014). In reaching its conclusion, the court held that the therapist-client privilege prohibits *any witness* from testifying about confidential information acquired by a therapist while attending a client, even if the information is

12

introduced through a third party such as D.P. *Id.* We will first consider whether the court of appeals was correct when it determined that the therapist-client privilege extends to third parties, and then, based on our conclusion, we will examine whether the admission of N.M.'s testimony was harmless error.

## A.

To determine whether the therapist-client privilege extends to third-party testimony, we once again look to the text of the statute. The therapist-client privilege statute, by its terms, addresses only the competency of registered nurses, psychologists, and licensed social workers. Minn. Stat. § 595.02, subd. 1(g). If a therapist discloses information to a third party in an out-of-court setting, as occurred here, the privilege statute does not require a court to exclude the third party's testimony. In fact, the statute does not address the competency of third parties at all.

In response, Expose insists that such a narrow reading of the therapist-client privilege statute dilutes the privilege. However, Expose confuses the privilege with a therapist's professional duty of confidence. We have long construed evidentiary privileges narrowly. *See Larson v. Monpetit*, 275 Minn. 394, 402, 147 N.W.2d 580, 586 (1966). For example, in the analogous context of the physician-patient privilege, we said that,

> [a]s with other privileges, the privilege is essentially designed to forbid compulsory disclosure by the person to whom the confidence was extended. It therefore does not exempt a third person who overheard the conversation or gained the information, with or without the knowledge of the patient, from testifying unless the third person is an agent of the physician.

13

*State v. Staat*, 192 N.W.2d 192, 197-98 (Minn. 1971). Expose does not provide a convincing reason to treat the therapist-client privilege any differently, particularly in the absence of textual support for his position. Accordingly, D.P.'s testimony regarding Expose's allegedly threatening statements was not subject to the therapist-client privilege.

B.

We now address whether Expose is entitled to a new trial due to N.M.'s disclosure of privileged information at trial. Because the district court's error in admitting the information does not implicate a constitutional right, a new trial is required only if the error "substantially influenced the jury's verdict." *State v. Sanders*, 775 N.W.2d 883, 887 (Minn. 2009).

The State urges us to affirm Expose's conviction because the jury heard the substance of the alleged threats through D.P.'s testimony, even though she was not present when Expose made the statements. Expose, on the other hand, argues that D.P.'s testimony constituted inadmissible hearsay, and thus we cannot consider it in our assessment of whether the district court's error was harmless. We need not address Expose's hearsay argument because we conclude that, even in light of D.P.'s testimony, the erroneous admission of the privileged information through N.M.'s testimony substantially influenced the verdict.

In assessing whether an error is harmless, the question is not whether the evidence was sufficient to support the conviction, but rather whether the error substantially influenced the verdict. *See State v. Koppi*, 798 N.W.2d 358, 365-66 (Minn. 2011)

14

(rejecting the proposition that harmless-error analysis is about assessing the sufficiency of the evidence presented at trial). Here, even if D.P.'s testimony were legally sufficient to support Expose's conviction in the absence of evidentiary error—a question we need not decide—we cannot conclude that the error was harmless. N.M. was the State's first and primary witness and the only witness with first-hand knowledge of Expose's alleged threats. N.M. not only recounted Expose's statements from the therapy session to the jury, she also provided the key circumstantial evidence that Expose possessed the mens rea required for the offense.

To convict Expose, the jury had to find that he acted with "reckless disregard of the risk" that his threats would cause terror. Minn. Stat. § 609.713, subd. 1. Describing Expose's statements, N.M. testified that, "it seems like that would have been thought about, it wasn't just something you'd say when you're upset," and that, "it seem[ed] kind of specific." N.M. stated that she believed Expose was not making an idle threat, because it went "a step beyond," based on Expose's "tone and . . . body language." Without N.M.'s testimony, the jury would have had to resort to speculation about what Expose had actually said, how he said it, and his state of mind at the time.

In comparison, D.P.'s testimony was less substantial. D.P.'s testimony conveyed only what N.M. told D.P. that Expose had said, not the actual content or tone of Expose's statements. D.P.'s testimony was also far less extensive than N.M.'s testimony; in particular, it stopped short of N.M.'s testimony on the critical element of Expose's mens rea. For example, only N.M. told the jury that she had warned Expose that she was a mandated reporter and had tried to calm him down, but that Expose had continued to

make threats throughout the session. D.P. was also unable to describe Expose's body language or level of anger during the session, or compare Expose's statements with those of other upset clients. Thus, N.M.'s testimony provided the key evidence that Expose had acted recklessly with respect to causing terror. Accordingly, because we cannot say that the error in this case was harmless, we reverse Expose's terroristic-threats conviction.

V.

For the foregoing reasons, we affirm the judgment of the court of appeals as modified and remand to the district court for further proceedings consistent with this opinion.

Affirmed as modified and remanded.


WRIGHT, J., took no part in the consideration or decision of this case.

HUDSON, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.