# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-0413

Jerry Expose, Jr.,
Appellant,

vs.

Thad Wilderson & Associates, P. A.,
Respondent,

Nina Mattson,
Respondent.

**Filed May 4, 2015**
**Affirmed in part, reversed in part, and remanded**
**Johnson, Judge**

Ramsey County District Court
File No. 62-CV-13-5229

A.L. Brown, Marcus L. Almon, Capitol City Law Group, LLC, St. Paul, Minnesota (for appellant)

Nicole L. Brand, Kathleen M. Ghreichi, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota (for respondent Thad Wilderson & Associates, P.A.)

Peter G. Van Bergen, Andrea E. Reisbord, Cousineau McGuire Chartered, Minneapolis, Minnesota (for respondent Nina Mattson)

Considered and decided by Johnson, Presiding Judge; Halbrooks, Judge; and Larkin, Judge.

## S Y L L A B U S

1. The immunity conferred by Minnesota Statutes section 148.975, subdivisions 4 and 8, does not apply to a mental-health therapist who is not licensed by the Board of Psychology.

2.     The common-law doctrine of absolute privilege, which, in certain circumstances, protects persons from liability for statements made in judicial proceedings, cannot be invoked by a mental-health therapist who is alleged to have breached the duty of confidentiality imposed by the psychologist-patient privilege in Minnesota Statutes section 595.02, subdivision 1(g), except to the extent that the therapist was specifically required by a trial court's evidentiary ruling to give testimony.

3.     A claim of invasion of privacy by publication of private facts may not be dismissed on the ground that the plaintiff did not serve an affidavit of expert review pursuant to Minnesota Statutes section 145.682 because expert testimony is not necessary to establish a *prima facie* case.

**O P I N I O N**

**JOHNSON**, Judge

Jerry Expose, Jr., was convicted of the criminal offense of making a terroristic threat during an anger-management counseling session. His mental-health therapist, Nina Mattson, disclosed his threatening statements to a police officer, prosecutors, and the jury in Expose's criminal trial. In this civil action, Expose alleges that Mattson and the clinic that employed her should be held liable for those disclosures because Mattson had a duty to maintain the confidentiality of statements Expose made during the counseling session. Mattson and the clinic moved for a judgment in their favor based on three affirmative defenses. The district court converted the motion to a motion for summary judgment, granted the motion, and entered judgment in favor of Mattson and the clinic. We conclude that, with an exception for one part of Expose's claims, Mattson and the clinic

are not entitled to summary judgment on the grounds identified by the district court. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

The facts recited below are based on our review of the parties' pleadings and other documents in the district court record in this case.

In 2012, Expose sought anger-management counseling from Thad Wilderson & Associates, P.A., a clinic that provides mental-health services. At the time, Nina Mattson was an intern at the clinic and in the process of fulfilling the licensure requirements of a psychologist. The clinic assigned Mattson to be Expose's therapist.

Expose had a counseling session with Mattson on October 10, 2012. During that session, Expose talked about a Ramsey County child-protection caseworker, who Expose believed was making it more difficult for him to be reunited with his children. Expose made statements that caused Mattson to believe that Expose might harm the caseworker. Mattson's case notes state as follows:

> [Expose] began telling me his thoughts about his CP work[er] [D.P.] and that he will be applying for a new worker as he feels she is a barrier, the main barrier between his getting his kids back. He said that if his court hearing on October 13 went awry, he would break [D.P.'s] back. He also said that if he couldn't get to her himself, he would only have to make a couple of phone calls to have her taken out. He said that he didn't care what happened to him as long as his kids were placed in a safe home.

Immediately after the counseling session, Mattson consulted with her supervisor, who advised her to contact law enforcement. Mattson contacted the Ramsey County Sheriff's Department, which referred her to the St. Paul Police Department. Mattson also

3

promptly called the caseworker to inform her of Expose's threatening statements and left a voice-mail when the caseworker did not answer the call. Mattson spoke directly with the caseworker by telephone the following day.

A St. Paul police officer later contacted Mattson to obtain additional information about Expose's threatening statements. Mattson answered the officer's questions and gave the officer a copy of her notes of the October 10, 2012 counseling session. On November 7, 2012, Expose was arrested on a charge of making a terroristic threat, in violation of Minn. Stat. § 609.713, subd. 1 (2012). On or about December 31, 2012, Mattson received a subpoena requiring her to appear at the Ramsey County Courthouse on January 14, 2013, to give testimony in Expose's criminal trial. On January 10, 2013, Mattson met with prosecutors who were assigned to Expose's case and were preparing for trial. During the meeting with prosecutors, Mattson disclosed the statements Expose had made during the October 10, 2012 counseling session.

Expose's criminal trial occurred in late January 2013. The state called Mattson as a witness in its case-in-chief. Expose objected to Mattson's testimony on the ground that the statements he made during the October 10, 2012 counseling session are protected by the psychologist-patient privilege. *See* Minn. Stat. § 595.02, subd. 1(g) (2014). The district court overruled the objection. The jury found Expose guilty. On direct appeal, this court concluded that the district court erred by overruling Expose's objection. Accordingly, we reversed the conviction and remanded for a new trial. The supreme court later granted the state's petition for further review. Expose's appeal of his criminal

4

conviction presently is pending in the supreme court. *See generally State v. Expose*, 849 N.W.2d 427 (Minn. App. 2014), *review granted* (Minn. Sept. 24, 2014).

In March 2013, Expose commenced this civil action against Mattson and the clinic. His complaint states four counts: (1) a violation of the Minnesota Health Records Act, against Mattson; (2) a claim of invasion of privacy by publication of private facts, against Mattson; (3) an allegation that the clinic is vicariously liable for the conduct at issue in counts 1 and 2; and (4) a claim of negligent supervision, against the clinic. Mattson and the clinic, through separate counsel, served their respective answers in May 2013.

In September 2013, the clinic moved for judgment on the pleadings. *See* Minn. R. Civ. P. 12.03. Mattson joined in the motion. The clinic and Mattson sought judgment in their favor on three grounds: (1) they are immune from liability on all claims based on a statute that imposes a duty to warn a third person of a serious threat of physical violence, *see* Minn. Stat. § 148.975 (2014); (2) they are immune from liability on all claims based on the common-law doctrine of absolute privilege; and (3) Expose's first and second claims are barred by his failure to serve an affidavit of expert review, *see* Minn. Stat. § 145.682 (2014).

In January 2014, the district court issued a 26-page order and memorandum in which it adopted each of the three arguments asserted in the clinic's and Mattson's motions. The district court also determined *sua sponte* that the clinic and Mattson are entitled to judgment on Expose's first and second claims on the ground that Expose consented to Mattson's disclosure of the statements he made during the October 10, 2012

counseling session.  In addition, the district court determined *sua sponte* that the clinic is entitled to judgment on Expose's allegation of vicarious liability and his fourth claim. Expose appeals.

## ISSUES

I.      Are Mattson and the clinic entitled to judgment on Expose's health-records-act claim and his invasion-of-privacy claim on the ground that he consented to Mattson's disclosure of the statements he made during the October 10, 2012 counseling session?

II.      Are Mattson and the clinic entitled to judgment on all claims based on the immunity provided by Minnesota Statutes section 148.975?

III.      Are Mattson and the clinic entitled to judgment on all claims based on the common-law doctrine of absolute privilege?

IV.      Are Mattson and the clinic entitled to judgment on Expose's invasion-of-privacy claim on the ground that Expose did not serve an affidavit of expert review pursuant to Minnesota Statutes section 145.682?

## ANALYSIS

Before we analyze the substance of the parties' respective arguments, we must determine the proper procedural posture of the case, which determines the standard and scope of our appellate review.

The clinic and Mattson filed motions for judgment on the pleadings, pursuant to rule 12.03 of the rules of civil procedure.  The district court, in its order and memorandum, referred to respondents' motions as motions to dismiss for failure to state a claim, pursuant to rule 12.02(e).  In a motion under rule 12.02(e), a district court may

6

consider documents other than the pleadings only if the documents are attached to a pleading or are referenced in a pleading. *Hardin Cnty. Sav. Bank v. Housing & Redevelopment Auth. of Brainerd*, 821 N.W.2d 184, 192 (Minn. 2012); *Northern States Power Co. v. Metropolitan Council*, 684 N.W.2d 485, 490-91 (Minn. 2004); *Martens v. Minnesota Mining & Mfg. Co.*, 616 N.W.2d 732, 739 n.7 (Minn. 2000); *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 497 (Minn. 1995). The district court's order and memorandum notes that a rule 12 motion may be converted to a motion for summary judgment. Both rule 12.03 and rule 12.02(e) provide for the conversion of either type of motion into a motion for summary judgment, with substantially identical language: "If . . . matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Minn. R. Civ. P. 12.03; *see also* Minn. R. Civ. P. 12.02(e).

No documents were attached to the parties' pleadings, and only two documents were referenced in the pleadings.[1] The clinic and Expose, however, submitted additional documents to the district court that are not referenced in the pleadings. Some of those documents are discussed in the district court's order and memorandum. In their appellate briefs, all three parties suggest that this court should apply the standard of review

---

[1]The first is a document entitled "Client Rights and Responsibilities," which is quoted in paragraph 11 of the complaint and referenced in paragraph 13 of the clinic's answer. The second is a document entitled "Excerpt from counseling session with Jerry Expose," which is referenced in paragraph 16 of the clinic's answer.

7

applicable to a rule 12 motion, but they nonetheless proceed to discuss documents that are not referenced in the pleadings. No party contends that the district court erred by considering documents beyond the pleadings. Because the district court did not exclude the documents that are beyond the pleadings, and because some of those documents are integral to the district court's analysis and the parties' arguments, we will treat the motions as motions for summary judgment. *See* Minn. R. Civ. P. 12.03; *Northern States Power*, 684 N.W.2d at 490-91 (construing grant of motion to dismiss as grant of summary judgment because district court considered affidavit not attached to complaint); *McAllister v. Independent Sch. Dist. No. 306*, 276 Minn. 549, 551, 149 N.W.2d 81, 83 (1967) (construing grant of motion for summary judgment as such because district court considered three affidavits); *cf. Gretsch v. Vantium Capital, Inc.*, 846 N.W.2d 424, 429 n.4 (Minn. 2014) (construing grant of motion to dismiss as such because, even though district court converted motion and considered affidavit, all documents necessary to resolution of appellate issues were referenced in complaint).

A district court must grant a motion for summary judgment if the evidence demonstrates "that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the non-moving party. *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008). This court applies a *de novo* standard of review to the district court's legal conclusions on summary judgment and views the evidence in the light most favorable to the non-moving party. *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 6 (Minn. 2012); *Day*

*Masonry v. Independent Sch. Dist. 347*, 781 N.W.2d 321, 325 (Minn. 2010).  This court

also applies a *de novo* standard of review to matters of statutory interpretation.  *Day*

*Masonry*, 781 N.W.2d at 326.

## I.

Expose first argues that the district court erred by concluding that Mattson and the

clinic are entitled to judgment as a matter of law on his health-records-act claim and his

invasion-of-privacy claim on the ground that he consented to Mattson's disclosures of the

statements he made during the October 10, 2012 counseling session.[2]

The Minnesota Health Records Act governs the release of a patient's health-

related records by health-care providers.  *See* Minn. Stat. § 144.293, subd. 1 (2014).  At

the crux of the statute is the following rule of proscription:

> A provider, or a person who receives health records
> from a provider, may not release a patient's health records to
> a person without:
>
> (1)   a signed and dated consent from the patient or
> the patient's legally authorized representative authorizing the
> release;
>
> (2)   specific authorization in law; or
>
> (3)   a representation from a provider that holds a
> signed and dated consent from the patient authorizing the
> release.

Minn. Stat. § 144.293, subd. 2.  The term "health record" is defined in the statute to

include "any information, whether oral or recorded in any form or medium, that relates to

---

[2]Expose does not make a procedural challenge to the *sua sponte* nature of the district court's resolution of the issue of consent.  He makes only a substantive challenge to the district court's legal analysis of the issue.

the past, present, or future physical or mental health or condition of a patient [or] the provision of health care to a patient." Minn. Stat. § 144.291, subd. 2(c) (2014). Thus, Mattson and the clinic were under a general obligation to not release any information concerning Expose's counseling, either orally or in documentary form. *See* Minn. Stat. § 144.293.

The legislature has expressly authorized a cause of action for a violation of section 144.293, subdivision 2:

> A person who does any of the following is liable to the patient for compensatory damages caused by an unauthorized release or an intentional, unauthorized access, plus costs and reasonable attorney fees:
>
> (1)    negligently or intentionally requests or releases a health record in violation of sections 144.291 to 144.297;
>
> (2)    forges a signature on a consent form or materially alters the consent form of another person without the person's consent;
>
> (3)    obtains a consent form or the health records of another person under false pretenses; or
>
> (4)    intentionally violates sections 144.291 to 144.297 by intentionally accessing a record locator service without authorization.

Minn. Stat. § 144.298, subd. 2 (2014); *see also Larson v. Northwestern Mut. Life Ins. Co.*, 855 N.W.2d 293, 301-02 (Minn. 2014).

In count 1 of his complaint, Expose alleges that Mattson and the clinic should be held liable under the first paragraph of subdivision 2 on the ground that Mattson unlawfully released his health records, in three different ways: (1) by disclosing

threatening statements Expose made during the October 10, 2012 counseling session to the St. Paul Police Department and by giving a police officer her case notes of that session; (2) by disclosing Expose's threatening statements to prosecutors in the Ramsey County Attorney's Office; and (3) by testifying about Expose's threatening statements at Expose's criminal trial. In both his complaint and his appellate brief, Expose essentially concedes that Mattson did not violate the health records act when she disclosed Expose's threatening statements to Expose's caseworker.

The district court disposed of Expose's health-records-act claim by relying on a document entitled "Client Rights and Responsibilities," which appears to be a form prepared by the clinic for use with its patients. The document recites six "responsibilities" that are expected of patients, such as the responsibility to keep scheduled appointments, to arrive for scheduled appointments in a sober condition, and to actively participate in counseling sessions. The form also recites 13 "rights" that the clinic owes to its patients, such as the right to be treated with courtesy and respect, to receive appropriate services, and to ask questions. The eighth item in that list states that a patient has the following rights:

> To have information about you treated as strictly confidential, unless:
>
> a.      You or your guardian give written permission to the Multicultural Mental Health Clinic to release specific types of information regarding your case to specific persons or agencies.
>
> b.      There is reasonable cause to believe that a child or vulnerable adult is being neglected, or physically or sexually abused.

> c. There is sufficient reason to believe that a client may do bodily harm to self or others. In such a case, appropriate persons or agencies will be contacted in order to prevent such injury.
>
> d. The Multicultural Mental Health Clinic is subpoenaed by a court of law to release information.

Expose signed the document on September 26, 2012. The district court reasoned that Expose cannot prove his health-records-act claim because, based on paragraphs (c) and (d), the document "served as plaintiff's consent to release his health records, which released defendants from liability."

Expose contends that the document did not express his consent for Mattson or the clinic to release his health records in the manner contemplated by section 144.293, subdivision 2(1). He asserts that the document was intended merely to serve as a disclosure that is required by the health records act. There is no evidence in the record as to why the clinic used the document or whether the clinic considered it to be a general release. The health records act, however, is consistent with Expose's assertion: "A provider shall provide to patients, in a clear and conspicuous manner, a written notice concerning practices and rights with respect to access to health records," Minn. Stat. § 144.292, subd. 4 (2014), and the notice "must include an explanation of . . . disclosures of health records that may be made without the written consent of the patient, including the type of records and to whom the records may be disclosed," *id.* at subd. 4(1). Expose's contention raises an issue as to whether a health-care provider, when fulfilling its statutory duty to provide notice to a patient of the patient's rights with respect to the

12

confidentiality of health records, may, in the same stroke, obtain the patient's consent for a future release of health records. The purpose of section 144.292, subdivision 4, appears to be to inform a patient of his or her rights and, thereby, to help the patient protect those rights. To adopt the district court's reasoning essentially would allow the statute to be used in a manner that would defeat a patient's right to the confidentiality of his or her health records.

In any event, the document on which Mattson and the clinic rely does not comply with the statutory provision for written consent for a release of health records. The health records act allows a provider to release health records pursuant to "a signed and dated consent . . . authorizing *the release*." Minn. Stat. § 144.293, subd. 2(1) (emphasis added). This language implies that a patient's written consent must include some specific limitations that would reflect the patient's knowing and voluntary authorization of a particular release. The concept of a limited release is further suggested by another subdivision of section 144.293, which provides that a person who releases health records warrants that she "has complied with the limits set by the patient in the consent." Minn. Stat. § 144.293, subd. 10(c)(3). The document on which the district court relied is not a form of the type that medical providers and attorneys typically use to authorize the release of health records. The document does not specify the particular health records that may be released or impose any other limits on the patient's consent. Paragraph 8c of the document appears to describe a circumstance in which a release of health records may be justified by another statute, in which event a patient's consent would be unnecessary. *See e.g.*, Minn. Stat. § 148.975, subd. 2. Thus, Expose's signature on the clinic's "Client

Rights and Responsibilities" document does not constitute valid consent for the disclosures that Expose challenges in this case.[3]

Thus, the district court erred by ordering judgment in favor of Mattson and the clinic on Expose's first claim, which is based on the health records act. The district court ordered entry of judgment on Expose's invasion-of-privacy claim for the same reason, without separate analysis, and, thus, erred with respect to that claim as well. In light of our conclusions with respect to the first and second claims, the clinic is not entitled to judgment as a matter of law on Expose's allegation of vicarious liability.

## II.

Expose next argues that the district court erred by concluding that Mattson and the clinic are entitled to judgment as a matter of law on all claims on the ground that they are immune from liability based on a statute that imposes on licensed psychologists a duty to warn third persons of danger in certain circumstances.

---

[3]Expose contends in the alternative that, even if the "Client Rights and Responsibilities" document were valid consent for a release of his health records, Mattson exceeded the scope of that consent. More specifically, Expose contends that paragraph 8(c) would limit his consent to only those releases that are necessary "to prevent . . . injury" to others. Expose's contention is valid at this stage of the case. The evidence in the record would create a genuine issue of material fact concerning whether Mattson made each of the challenged disclosures for the purpose of preventing Expose from injuring the caseworker. Similarly, with respect to paragraph 8(d), the evidence in the record would create a genuine issue of material fact as to whether Mattson's disclosures to prosecutors were required by the subpoena. The subpoena plainly "ordered" her to appear and give testimony at trial. The subpoena also requested that Mattson "please call" the "victim/witness assistance program" in the county attorney's office, but there is no suggestion that compliance with that request was required by law. Thus, even if Expose's signature on the "Client Rights and Responsibilities" document were valid consent for some type of release of his health records, Mattson and the clinic could not demonstrate that there is no genuine issue of material fact as to whether Mattson's disclosures were within the scope of Expose's consent.

If a licensed psychologist's patient has "communicated to the licensee a specific, serious threat of physical violence against a specific, clearly identified or identifiable potential victim," the licensed psychologist has a "duty to predict, warn of, or take reasonable precautions to provide protection from [the patient's] violent behavior." Minn. Stat. § 148.975, subd. 2. If the duty arises and the licensed psychologist fulfills the duty, the licensed psychologist is deemed to have not made an improper disclosure: "Good faith compliance with the duty to warn shall not constitute a breach of confidence and shall not result in monetary liability or a cause of action against the licensee." *Id.*, subd. 4. Furthermore:

> No monetary liability and no cause of action, or disciplinary action by the board may arise against a licensee for disclosure of confidences to third parties, for failure to disclose confidences to third parties, or for erroneous disclosure of confidences to third parties in a good faith effort to warn against or take precautions against a client's violent behavior or threat of suicide for which a duty to warn does not arise.

*Id.*, subd. 8.

Expose contends that the statutory immunity associated with the duty to warn in section 148.975 does not apply to Mattson because she was not licensed at the time of the October 10, 2012 counseling session. He focuses on the legislature's frequent use of the word "licensee" to describe the persons who are subject to the duty to warn and who benefit from the immunity associated with fulfilling that duty. *See id.*, subds. 2, 4, 8. The word "licensee" is defined in chapter 148 to mean "a person who is licensed by the [Board of Psychology] as a licensed psychologist or as a licensed psychological

15

practitioner." Minn. Stat. § 148.89, subd. 4 (2014). It is undisputed that Mattson was neither a licensed psychologist nor a licensed psychological practitioner when she counseled Expose on October 10, 2012. Thus, Mattson is not entitled to the immunity provided by section 148.975, subdivisions 4 and 8.[4]

Mattson and the clinic contend that they should be protected by the immunity provisions of section 148.975 because, as a student intern, Mattson was governed by the Board of Psychology's rules of ethical conduct, which provide that the disclosure of confidential information is justified in certain circumstances, in which case the disclosure will not be considered a violation of those rules. *See* Minn. R. 7200.4500, subp. 1; Minn. R. 7200.4700, subp. 2. The applicable rule permits a disclosure of a client's private information without consent if "necessary to protect against a clear and substantial risk of imminent serious harm being inflicted by the client on the client or another individual." Minn. R. 7200.4700, subp. 2. Regardless whether that professional rule governs an

---

[4]This conclusion follows naturally from the plain language of the statute. The conclusion is confirmed by a brief review of the history of the statute. A previous version of the statute imposed a duty to warn, and conferred corresponding immunity, on a "practitioner," without regard to licensure. Minn. Stat. § 148.975, subds. 2, 4 (1994). At that time, the statutory definition of "practitioner" was broader than the present definition of "licensee"; a "practitioner" was defined as "a psychologist, school psychologist, nurse, chemical dependency counselor, or social worker who is licensed by the state or who performs psychotherapy within a program or facility licensed by the state." *Id.*, subd. 1(c). In 1996, the legislature amended the duty-to-warn statute to replace the word "practitioner" with the word "licensee." 1996 Minn. Laws ch. 424, § 21, at 1007 (codified at Minn. Stat. § 148.975, subd. 2 (1996)). At that time, the word "licensee" was defined to mean "a person who is licensed by the board as a licensed psychologist or as a psychological practitioner." Minn. Stat. § 148.89, subd. 4 (1996). In 1999, the legislature clarified the definition of "licensee" to mean "a person who is licensed by the board as a licensed psychologist or as a *licensed* psychological practitioner." 1999 Minn. Laws ch. 109, § 2, at 457 (emphasis added) (codified at Minn. Stat. § 148.89, subd. 4 (2000)).

16

unlicensed practitioner, and regardless whether Mattson's disclosures were within the scope of the rule, the immunity provisions of section 148.975 apply only to "licensees," which is defined by statute in such a way as to exclude an unlicensed mental-health therapist such as Mattson. *See* Minn. Stat. § 148.975, subds. 4, 8; Minn. Stat. § 148.89, subd. 4. The statutory immunity, by its plain language, does not apply to an unlicensed person, even if she is governed by the professional rules for psychologists. Mattson does not contend that the board of psychology has conferred immunity on an unlicensed intern or that it has the power to do so.

Thus, the district court erred by concluding that Mattson is protected by the immunity provisions of section 148.975, subdivisions 4 and 8.

## III.

Expose next argues that the district court erred by concluding that Mattson and the clinic are entitled to judgment as a matter of law on all claims based on the doctrine of absolute privilege.

Under the common-law doctrine of absolute privilege, a person may, in some circumstances, be "completely shielded from liability" for statements made in the course of a judicial proceeding. *Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, 306-08 (Minn. 2007). A statement may be protected by the absolute privilege only if the statement is "(1) made by a judge, judicial officer, attorney, or witness; (2) made at a judicial or quasi-judicial proceeding; and (3) . . . relevant to the subject matter of the litigation." *Id.* at 306. The purpose of the absolute privilege is to "encourage[] frank testimony by witnesses, by enabling them to testify without fear of civil liability for their

17

statements." *Id.* "But the applicability of absolute privilege is limited" such that it does not apply "unless the administration of justice requires complete immunity from being called to account for language used." *Id.* (internal quotations omitted).

The district court concluded that absolute privilege protects Mattson and the clinic from liability on all of Expose's claims. Expose contends that the district court erred because the doctrine of absolute privilege is inconsistent with Mattson's duty of confidentiality and, thus, does not apply. He relies on the supreme court's opinion in *Mahoney & Hagberg*, which states that it is appropriate to consider any "competing policy interests that would counsel against application of the privilege." *Id.* at 309. The supreme court provided an example of a competing policy interest by stating, "A separate duty of a witness to remain silent, grounded for example in the attorney-client privilege, might be a reason the public policy analysis would weigh against application of the absolute privilege doctrine." *Id.*

Expose contends that the psychologist-patient privilege is similar to the attorney-client privilege and that similar policy reasons weigh against the application of the absolute privilege in this case.[5] The purpose of the psychologist-patient privilege is to increase the effectiveness of treatment by creating "an atmosphere of confidence and trust

_____

[5]In the district court, Expose argued that the doctrine of absolute privilege does not apply to his health-records-act claim and his invasion-of-privacy claim because the doctrine applies only to defamation claims and claims sounding in defamation. *Cf. Mahoney & Hagberg*, 729 N.W.2d at 309-10 (declining to decide whether absolute privilege applies to other types of claims because plaintiff's claims sounded in defamation). But Expose did not renew that argument on appeal. Thus, we are not asked to decide whether Expose has alleged claims that sound in defamation or whether the doctrine of absolute privilege may be extended to other types of claims.

in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Jaffee v. Redmond*, 518 U.S. 1, 10, 116 S. Ct. 1923, 1928 (1996). The privilege belongs to the patient and may be waived only by the patient. *State v. Gillespie*, 710 N.W.2d 289, 297 (Minn. App. 2006), *review denied* (Minn. May 16, 2006). The purpose of the absolute privilege, on the other hand, is to "encourage witnesses to participate in judicial proceedings so that the search for truth may be fruitful." *Mahoney & Hagberg*, 729 N.W.2d at 309. These two purposes are at odds with each other; the psychologist-patient privilege generally seeks to conceal information, *see Jaffee*, 518 U.S. at 10, 116 S. Ct. at 1928, while the absolute privilege generally seeks to reveal information, *see Mahoney & Hagberg*, 729 N.W.2d at 309. The policy interests promoted by the two privileges are so contrary and inconsistent that applying the absolute privilege effectively would defeat the psychologist-patient privilege. The logic of the supreme court's comment in *Mahoney & Hagberg* concerning the attorney-client privilege has the same force with respect to the psychologist-patient privilege. Furthermore, in this particular type of case, the doctrine of absolute privilege, if applied, would effectively nullify the legislature's expression of another policy interest, the rights of health-care patients to maintain the confidentiality of their health records. For these reasons, we conclude that the doctrine of absolute privilege cannot coexist with the psychologist-patient privilege.

The foregoing analysis assumes that the psychologist-patient privilege applied to Expose's threatening statements at all times. At Expose's criminal trial, however, the trial judge rejected Expose's assertion of the psychologist-patient privilege by overruling

his objection to Mattson's trial testimony. Mattson contends that the doctrine of absolute privilege should apply, at the least, with respect to her trial testimony because she appeared at trial involuntarily pursuant to a subpoena and because the trial judge overruled Expose's objection to her testimony. Mattson is correct in this respect. Regardless whether the supreme court ultimately affirms or reverses this court's decision that the psychologist-patient privilege should have prevented Mattson from testifying over Expose's objection, *see State v. Expose*, 849 N.W.2d at 430, it cannot be disputed that, at the time of trial, Mattson was required to answer the questions that the prosecutor posed to her. "It is well established that an order directing a witness to answer questions must be obeyed, and a failure to obey such order subjects the witness to a contempt citation, *even if the order was erroneous or improvident*." *Minnesota State Bar Ass'n v. Divorce Assistance Ass'n, Inc.*, 311 Minn. 276, 283, 248 N.W.2d 733, 740 (1976) (emphasis added). The doctrine of absolute privilege may apply if a person voluntarily makes a statement that later is the basis of a civil action, *Mahoney & Hagberg*, 729 N.W.2d at 306, albeit within "narrow limits," *Matthis v. Kennedy*, 243 Minn. 219, 223, 67 N.W.2d 413, 417 (1954). And there are even stronger reasons to apply the doctrine of absolute privilege if a person *involuntarily* makes a statement that later is the basis of a civil action. *See Johnson v. Dirkswager*, 315 N.W.2d 215, 223 (Minn. 1982) (holding that state official was entitled to absolute privilege because he was "required by law," *i.e.*, data privacy act, to disclose reason for termination of plaintiff's employment).

Thus, Mattson is entitled to the protections of the doctrine of absolute privilege with respect to Expose's claim that she unlawfully disclosed his threatening statements in

her trial testimony. But Mattson is not entitled to the protections of the doctrine of absolute privilege with respect to Expose's claim that she unlawfully disclosed his threatening statements to a police officer in October or November 2012 and to prosecutors in January 2013. Therefore, the district court erred in part by concluding that the doctrine of absolute privilege bars all aspects of Expose's health-records-act claim and invasion-of-privacy claim against Mattson and the clinic.

## IV.

Expose last argues that the district court erred by concluding that Mattson and the clinic are entitled to judgment as a matter of law on his invasion-of-privacy claim because he did not serve an affidavit of expert review.

In certain negligence cases against a "health care provider,"[6] a plaintiff must serve an affidavit on a defendant on two occasions in the early stages of the case. Minn. Stat. § 145.682, subd. 2; *Wesely v. Flor*, 806 N.W.2d 36, 39-40 (Minn. 2011). First, the plaintiff generally must serve an affidavit of expert review with the summons and complaint. Minn. Stat. § 145.682, subd. 2(1). The affidavit of expert witness must state that the plaintiff's attorney has consulted with an expert, who has opined that "one or

---

[6]Expose argues in part that the expert-affidavit statute does not apply because Mattson was not within the statutory definition of "health care provider" at the time of the October 10, 2012 counseling session. "For purposes of [section 145.682], 'health care provider' means a physician, surgeon, dentist, or other health care professional or hospital, including all persons or entities providing health care as defined in section 145.61, subdivisions 2 and 4, or a certified health care professional employed by or providing services as an independent contractor in a hospital." Minn. Stat. § 145.682, subd. 1. In response, the clinic argues that Expose did not preserve that argument by presenting it to the district court. The clinic is correct. Thus, we will not consider the argument. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

21

more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff." Minn. Stat. § 145.682, subd. 3(a); *see also Broehm v. Mayo Clinic*, 690 N.W.2d 721, 725 (Minn. 2005). Second, the plaintiff must serve on the defendant, within 180 days of the commencement of discovery, an affidavit identifying the experts to be called as witnesses, describing the substance of each expert's anticipated testimony, and summarizing the grounds of each expert's opinions. Minn. Stat. § 145.682, subds 2(2), 4(a); *see also Broehm*, 690 N.W.2d at 725. These requirements apply only if a plaintiff alleges "malpractice, error, mistake, or failure to cure,"[7] and only if "expert testimony is necessary to establish a prima facie case." *Id.*, subd. 2. If a plaintiff fails to comply with these requirements, the appropriate remedy is dismissal of the action with prejudice. *Id.*, subd. 6.

In this case, Expose did not serve an affidavit of expert review on Mattson or the clinic. The district court concluded that expert testimony is necessary to establish a *prima facie* case of invasion of privacy. The district court reasoned that Expose's invasion-of-privacy claim requires expert testimony because "[t]he nature and extent of the therapist/patient privilege and the therapist's associated duty of confidentiality is outside the knowledge of the average layperson," such that an expert would be required to "define the standard of care, explain the scope of the professional's duty, outline

---

[7]Expose does not argue that his invasion-of-privacy claim is not a type of claim to which the expert-affidavit statute applies. We are not aware of any caselaw limiting the application of the expert-affidavit statute to claims alleging negligence in medical care, as opposed to negligence in the handling of records of medical care. Thus, we assume without deciding that a claim concerning the allegedly unlawful release of records of medical care is governed by the expert-affidavit statute.

whether exceptions to the duty exist, and, if there are exceptions, when the exceptions are applicable." Accordingly, the district court determined that Expose's invasion-of-privacy claim should be dismissed for his failure to serve an affidavit of expert review. But the district court concluded that expert testimony is not necessary to establish a *prima facie* case of a violation of the Minnesota Health Records Act. The district court reasoned that "[t]he standard of care is set forth in the statute and is self-explanatory."

Expose contends that expert testimony also is unnecessary to establish a *prima facie* case of invasion of privacy. He contends that his invasion-of-privacy claim depends merely on "a simply factual question," namely, whether Mattson disclosed statements he made during the October 10, 2012 therapy session without his consent, and he contends that expert testimony would not assist the jury in making that factual determination. He contends further that the district court should have treated his invasion-of-privacy claim in the same manner as it treated his health-records-act claim.

A typical medical-malpractice case requires expert testimony to establish the standard of care in the medical community and that the medical professional deviated from that standard of care. *See, e.g.*, *Dickhoff ex rel. Dickhoff v. Green*, 836 N.W.2d 321, 329 (Minn. 2013), *reh'g denied* (Minn. Sept. 9, 2013); *Becker v. Mayo Found.*, 737 N.W.2d 200, 216 (Minn. 2007); *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 191 (Minn. 1990). An exception to this general rule is appropriate if "the acts or omissions complained of are within the general knowledge and experience of lay persons." *Tousignant v. St. Louis County*, 615 N.W.2d 53, 58 (Minn. 2000) (quotation omitted). To determine whether the general rule or the exception applies, a court must

23

determine whether expert testimony is necessary to establish the elements of the plaintiff's *prima facie* case. *Id.* at 59.

In this case, the elements of Expose's invasion-of-privacy claim require proof that Mattson published a statement that concerned his private life, that the statement "would be highly offensive to a reasonable person," and that the statement "is not of legitimate concern to the public." *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003) (quotations omitted); *see also Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 235 (Minn. 1998) (adopting Restatement (Second) of Torts § 652D (1977)). An invasion-of-privacy claim is not a professional-negligence claim, which necessarily would depend on the standard of care that prevails among persons within a particular profession. *See, e.g.*, *Dickhoff*, 836 N.W.2d at 329 (applying section 145.682 to medical-malpractice claim); *see also Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 732 N.W.2d 209, 219 (Minn. 2007) (applying Minnesota Statutes section 544.42, subdivision 2, to accountant-malpractice claim). Rather, an invasion-of-privacy claim may be asserted against anyone, professional or non-professional, and the elements of the claim are concerned primarily with community norms concerning privacy. *See Bodah*, 663 N.W.2d at 553. As such, Expose's invasion-of-privacy claim can be resolved based on "the general knowledge and experience of lay persons," without any expert testimony. *See Tousignant*, 615 N.W.2d at 58 (quotation omitted); *see also Blatz v. Allina Health Sys.*, 622 N.W.2d 376, 383, 385 (Minn. App. 2001) (concluding that timeliness of paramedics' response could be resolved without expert testimony), *review denied* (Minn. May 16, 2001).

The clinic contends that expert testimony is necessary because Expose's invasion-of-privacy claim implicates Mattson's professional duties following the October 10, 2012 counseling session, including her training in graduate school concerning those professional duties. The clinic's contention is not pertinent because it is focused on respondents' anticipated defenses to Expose's invasion-of-privacy claim, not on the elements of Expose's *prima facie* case. *See Tousignant*, 615 N.W.2d at 59; *see also Bodah*, 663 N.W.2d at 553. In addition, we have concluded that the statutory duty to warn did not apply to Mattson on October 12, 2012, because she was not a licensed psychologist at that time. *See supra* part II.

Thus, the district court erred by concluding that Expose's invasion-of-privacy claim requires expert testimony and that the expert-affidavit statute requires the dismissal of that claim.

## DECISION

The district court did not err by concluding that Mattson and the clinic are entitled to judgment with respect to statements she made in her testimony at Expose's criminal trial based on the doctrine of absolute privilege. The district court erred by concluding that Mattson and the clinic are entitled to judgment (1) on Expose's health-records-act claim and invasion-of-privacy claim on the ground that Expose consented to Mattson's disclosure of the threatening statements he made during the October 10, 2012 counsel session; (2) on all claims on the ground that Mattson is protected by the immunity provisions of the duty-to-warn statute; (3) on all claims on the ground that Mattson is protected by the doctrine of absolute privilege with respect to disclosures she made

25

before Expose's criminal trial; and (4) on Expose's invasion-of-privacy claim on the ground that he did not serve an affidavit of expert review. Therefore, the judgment of the district court is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings.

**Affirmed in part, reversed in part, and remanded.**