STATE OF MINNESOTA

IN SUPREME COURT

A14-0413



January 9, 2017

OFFICE OF
APPELLATE COURTS

Jerry Expose, Jr.,

        Respondent,

vs.

Thad Wilderson & Associates, P.A.,

        Appellant,

Nina Mattson,

        Appellant.

## O R D E R

Based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.      The opinion filed on November 30, 2016, is modified on page 2 of the slip opinion, paragraph 3 of the Syllabus, to read as follows:

> Because the record does not establish that the patient consented to the disclosure of information about his treatment, the district court erred in dismissing a claim that alleged an intern-therapist's disclosure of that information violated the Minnesota Health Records Act, Minn. Stat. §§ 144.291-.298 (2014).

2.      The opinion filed on November 30, 2016, is modified on pages 14-15 of the slip opinion, in the second sentence of the first paragraph in section IV, as follows:

1

Because the Client Rights and Responsibilities form that Expose signed was a notification of his rights as they relate to his health records, and was not a consent to release his health records, we conclude that the district court erred in dismissing this claim.

3.     The opinion filed on November 30, 2016, is modified on pages 16-17 of the slip opinion, in the last sentence of the second paragraph on page 16, as follows:

Because Expose did not provide consent to disclose information about his treatment in the manner set out in section 144.293, subdivision 2, the district court erred in dismissing Expose's claim alleging that Mattson's disclosure of Expose's threats during her second conversation with the investigating officer and during her pretrial meeting with prosecutors violated the Minnesota Health Records Act.

4.     The attached slip opinion, amended as state above, shall be substituted for the opinion filed on November 30, 2016.

5.     The petition of Thad Wilderson & Associates, P.A., for rehearing is otherwise denied.

Dated:  January 9, 2017                          BY THE COURT:

G. Barry Anderson
Associate Justice

STATE OF MINNESOTA

IN SUPREME COURT

A14-0413

Court of Appeals

Anderson, J.
Took no part, Hudson, McKeig, JJ.

Jerry Expose, Jr.,

Respondent,

vs.

Filed:   November 30, 2016
Office of Appellate Courts

Thad Wilderson & Associates, P.A.,

Appellant,

Nina Mattson,

Appellant.

_____

A.L. Brown, Marcus L. Almon, Capitol City Law Group, LLC, Saint Paul, Minnesota, for respondent.

William M. Hart, Nicole L. Brand, Kathleen M. Ghreichi, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota, for appellant Thad Wilderson & Associates, P.A.

Peter G. Van Bergen, Meaghan C. Bryan, Cousineau McGuire Chartered, Minneapolis, Minnesota, for appellant Nina Mattson.

Kay Nord Hunt, Michael N. Leonard, Lommen Abdo, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Psychological Association.

Nicholas B. Lienesch, Hans A. Anderson, Saint Paul, Minnesota, for amicus curiae Minnesota Board of Psychology.

_____

1

1.     Immunity is not provided under Minn. Stat. § 148.975 (2014) for an unlicensed intern-therapist who discloses a patient's threat of physical violence against a specific person to law enforcement.

2.     The absolute privilege doctrine does not shield a clinic employee's pretrial statements that disclosed the nature and circumstances of a patient's confidential treatment information either to law enforcement or, in preparation for trial, to the prosecutors.

3.     Because the record does not establish that the patient consented to the disclosure of information about his treatment, the district court erred in dismissing a claim that alleged an intern-therapist's disclosure of that information violated the Minnesota Health Records Act, Minn. Stat. §§ 144.291-.298 (2014).

Affirmed.

# OPINION

ANDERSON, Justice.

Respondent Jerry Expose, Jr. brought a civil action against appellant Thad Wilderson & Associates, P.A. (the clinic) and appellant Nina Mattson (collectively appellants), asserting claims for unlawful disclosure of health records under the Minnesota Health Records Act, §§ 144.291-.298 (2014), invasion of privacy, vicarious liability, and negligent supervision. Appellants jointly moved for judgment on the pleadings, and the district court dismissed the claims. As relevant here, the district court ruled that appellants are immune from liability under Minn. Stat. § 148.975 (2014), that they are immune from liability under the common law doctrine of absolute privilege, and that Expose consented

to Mattson's disclosures. The court of appeals reversed on all of these issues except the immunity under the common law doctrine of absolute privilege as to the testimony from the criminal trial. We granted the clinic's petition, as well as Mattson's petition, for review.

The three questions presented here arise in the context of a relationship between a patient and an unlicensed intern-therapist. First, we determine whether Minn. Stat. § 148.975, which imposes a duty to warn on a licensed therapist when a specific, serious threat of physical violence is made against a specific, clearly identified or identifiable person, imposes the same duty on an unlicensed intern-therapist to disclose that information to law enforcement. Second, we determine whether the common law doctrine of absolute privilege shields the disclosures made by an unlicensed intern-therapist to law enforcement and to prosecutors. Third, we determine whether a consent form notifying a client of the client's rights under the Minnesota Health Records Act authorizes the release of the client's medical records. Because we answer all three questions in the negative, we affirm the court of appeals.

I.

In March 2012, Expose was convicted of making terroristic threats against his 6-year-old daughter, his daughter's mother, and the mother's unborn child. As part of his sentence, Expose was ordered to undergo anger-management therapy. In September 2012, he began therapy at the clinic. Before his first session, Expose signed a "Client Rights and Responsibilities" form, which stated that information he shared with his therapist would be "treated as strictly confidential" unless certain described events occurred. Mattson, an unlicensed intern-therapist providing individual therapy under the clinic's supervision, was

3

Expose's therapist.[1] On October 10, 2012, during one of his therapy sessions, Expose made statements that threatened serious injury to the child protection caseworker assigned to a custody case involving his daughter. Mattson reported Expose's threats to her supervisor and then, at the direction of her supervisor, to both local law enforcement and to the caseworker.

*State v. Expose*

Based on the statements he made to Mattson, Expose was arrested and charged with one count of making terroristic threats under Minn. Stat. § 609.713, subd. 1 (2014). The State subpoenaed Mattson to testify at Expose's criminal trial on this charge. In early January 2013, Mattson met with the prosecutors who were assigned to Expose's case and disclosed information about the threats Expose made at his October 10 counseling session. Before trial, Expose moved to exclude any testimony from Mattson about whether, in light of her status as an unlicensed intern-therapist, she was obligated under Minn. Stat. § 148.975 to disclose Expose's alleged threats to fulfill a statutory duty to warn. The district court denied Expose's motion. The State then called Mattson as the first witness at trial. Expose objected, arguing that the therapist-client privilege prohibited Mattson from testifying. The district court overruled Expose's objection, reasoning that the

---

[1]    *See* Minn. Stat. § 148B.33, subd. 1(4) (2014) (requiring an applicant for a license from the Board of Marriage and Family Therapy to complete "at least two years of supervised postgraduate experience in marriage and family therapy"); Minn. Stat. § 148B.5301, subd. 1(a)(3) (2014) (requiring an applicant for a license as a professional clinical counselor to have no "fewer than 700 hours" of "supervised field experience in counseling").

4

therapist-client privilege did not cover statements threatening imminent harm to a person or persons.

A jury found Expose guilty of making terroristic threats, and the district court sentenced him to a stayed term of 28 months in prison. Expose appealed his conviction, arguing that Mattson's trial testimony was inadmissible under the therapist-client privilege. The court of appeals agreed with Expose and reversed his conviction, holding that the therapist-client privilege prohibited Mattson from testifying about information she learned during Expose's therapy sessions, including the content of Expose's threats. *See State v. Expose*, 849 N.W.2d 427, 437 (Minn. App. 2014). The court of appeals further held that admitting Mattson's testimony was prejudicial because Expose's privileged statements could not have been admitted through the testimony of any other witness. *Id.* at 436-37.

We granted review on three issues in Expose's criminal case, including whether the therapist-client privilege, which prohibits therapists from disclosing information or opinions in court that are acquired from clients in the therapist's professional capacity, *see* Minn. Stat. § 595.02, subd. 1(g) (2014), contains an exception for threatening statements made by the client, *State v. Expose*, 872 N.W.2d 252, 256 (Minn. 2015). We held that there is no "threats exception" to the statutory therapist-client privilege. *Id.* at 259. We concluded that the duty to warn imposed by Minn. Stat. § 148.975 creates a discrete duty to warn the potential victim of a specific serious threat of physical violence and that the duty is discharged once the threat is communicated to the potential victim or to a law enforcement agency. *Expose*, 872 N.W.2d at 258. The therapist-client privilege, on the other hand, is a statutory evidentiary privilege that addresses when and under what

5

circumstances therapists are permitted to testify about information acquired while treating a client. *Expose*, 872 N.W.2d at 257-58.

*Expose v. The Clinic and Mattson*

Before Expose appealed his criminal conviction, he commenced a civil suit against appellants, asserting claims against Mattson for violation of the Minnesota Health Records Act, Minn. Stat. §§ 144.291-.298, and invasion of privacy based on Mattson's disclosures to law enforcement and prosecutors.[2] Expose also asserted claims against the clinic for vicarious liability and negligent supervision.

Appellants brought a joint motion for judgment on the pleadings under Minn. R. Civ. P. 12.03, arguing that they are immune from liability with respect to Expose's claims. The district court dismissed Expose's claims on the grounds that the communications between Mattson and the intended victim, the police, and prosecutors were made in good faith and thus protected by immunity under Minn. Stat. § 148.975; that the absolute privilege doctrine shields Mattson from liability; and that Expose consented to the disclosure of his health records.

Expose appealed, and the court of appeals affirmed in part, reversed in part, and remanded, concluding that appellants are not immune from liability under section 148.975, the duty-to-warn statute, because the plain language of section 148.975 did not apply to an

---

[2]     In addition to Mattson's disclosures to prosecutors before the trial, Expose relied on Mattson's disclosures to the investigating officer who spoke with her between October and November 2012 to obtain additional information about Expose's threatening statements. Mattson answered the officer's questions and gave the officer a copy of her notes from the October 10, 2012, counseling session.

6

unlicensed intern-therapist like Mattson. *Expose v. Thad Wilderson & Assocs., P.A.*, 863 N.W.2d 95, 106 (Minn. App. 2015). The court of appeals also determined that Mattson is not entitled to the protection of the absolute privilege doctrine for the disclosures she made to prosecutors before Expose's criminal trial. *Id.* at 107-08. But the court of appeals affirmed the applicability of the common law doctrine of absolute privilege to the disclosures Mattson made during her compelled testimony at Expose's criminal trial. *Id.* Finally, the court of appeals concluded that the consent form signed by Expose did not comply with section 144.293, which provides for written consent of a release of health records. *Id.* at 104. The court of appeals remanded the case to the district court for further proceedings. *Id.* at 111. We granted the separate petitions for review filed by Mattson and the clinic.

When considering an appeal from summary judgment,[3] we must determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 6 (Minn. 2012). We review the district court's legal decisions on summary judgment de novo, and we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Id.*

---

[3] As noted above, appellants moved for judgment on the pleadings under Rule 12.03 of the Minnesota Rules of Civil Procedure. The court of appeals correctly recognized that a summary judgment standard applies on appellate review because the district court relied on documents that were not part of the pleadings. *Expose*, 863 N.W.2d at 101. The parties do not appeal this aspect of the decision and, accordingly, we apply the same standard here.

7

II.

We first consider whether the duty to warn imposed by Minn. Stat. § 148.975 applies

to an unlicensed intern-therapist, and in turn whether Mattson is entitled to immunity for

the disclosure of the information and notes from the October 10, 2012, therapy session to

law enforcement as it continued the investigation into Expose's threatening statements.[4]

Statutory interpretation presents a question of law, which we review de novo. *Vlahos v.*

*R&I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 679 (Minn. 2004). When the language

of a statute is unambiguous, we must follow the plain language of the statute. *Id.*

Minnesota Statutes § 148.975 states in relevant part:

> Subd. 2. **Duty to warn.** The duty to predict, warn of, or take
> reasonable precautions to provide protection from, violent behavior arises
> only when a client or other person has communicated to the licensee a
> specific, serious threat of physical violence against a specific, clearly
> identified or identifiable potential victim. If a duty to warn arises, the duty
> is discharged by the licensee if reasonable efforts, as defined in subdivision
> 1, paragraph (c), are made to communicate the threat.
>
> . . . .

---

[4] The question presented here is a narrow one. Expose acknowledged in the proceedings before the district court that Mattson's "conversation with [the caseworker, the investigating officer], and her supervisor," fell "within the duty to warn." He did not allege that Mattson made the disclosures "in bad faith." Additionally, Expose's complaint does not allege any liability for Mattson's initial disclosures to the caseworker or to law enforcement. "A reviewing court must generally consider 'only those issues that the record shows were presented and considered by the trial court in deciding the matter before it.' " *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quoting *Thayer v. Am. Fin. Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn. 1982)). Thus, we do not consider the issue of licensure as it relates to Mattson's initial disclosures.

8

Subd. 4. **Disclosure of confidences.** Good faith compliance with the duty to warn shall not constitute a breach of confidence and shall not result in monetary liability or a cause of action against the licensee.

. . . .

Subd. 7. **Optional disclosure.** Nothing in section 148.975 shall be construed to prohibit a licensee from disclosing confidences to third parties in a good faith effort to warn against or take precautions against a client's violent behavior or threat to commit suicide for which a duty to warn does not arise.

Subd. 8. **Limitation on liability.** No monetary liability and no cause of action, or disciplinary action by the board may arise against a licensee for disclosure of confidences to third parties, for failure to disclose confidences to third parties, or for erroneous disclosure of confidences to third parties in a good faith effort to warn against or take precautions against a client's violent behavior or threat of suicide for which a duty to warn does not arise.

The plain language of section 148.975, subdivision 2, imposes a duty on a "licensee" to warn of a client's violent behavior when a "specific, serious threat of physical violence" against another person is communicated to the licensee. For the purpose of this section, the term "licensee"[5] was defined as "a person who is licensed by the board [of psychology] as a licensed psychologist or as a licensed psychological practitioner." Minn. Stat. § 148.89, subd. 4 (2014). When a licensee acting in good faith to comply with the duty to warn discloses "confidences," "[n]o monetary liability and no cause of action, or disciplinary action by the board [of psychology,] may arise against a licensee for disclosure of confidences to third parties." Minn. Stat. § 148.975, subds. 4, 8.

---

[5]    The definition of "licensee" for the purpose of section 148.975 was amended after we granted review in this case. Act of May 22, 2016, ch. 163, art. 3, § 2, 2016 Minn. Laws 612, 644.

9

Mattson contends that, under the "optional disclosure" provision of section 148.975, subdivision 7, she is entitled to immunity for her subsequent disclosures to the investigating officer. Mattson argues that the duty to warn and to take precautions against violent behavior "logically extends to assisting with the person's criminal prosecution and conviction." Mattson bears the burden of establishing that she is entitled to immunity under this provision of section 148.975. *See J.E.B. v. Danks*, 785 N.W.2d 741, 746 (Minn. 2010).

We do not agree with Mattson's view of the immunity provided by section 148.975. The plain terms of section 148.975 impose a duty to warn on "the licensee" to whom a specific threat is communicated, Minn. Stat. § 148.975, subd. 2, and permit "a licensee" to, optionally, disclose confidences to warn against violent behavior even though "a duty to warn does not arise," *id.*, subd. 7. Because Mattson was not a "licensee" as defined by section 148.89, she does not fall within the class of people covered by the statute. *See* Minn. Stat. § 645.16 (2014).

Mattson also argues that she is entitled to immunity because she was acting as an agent of an immune licensee when she disclosed confidential information to the investigating officer. Assuming without deciding that an agency relationship existed, the existence of an agency relationship would not change the outcome. Nothing in the plain language of section 148.975 refers to agents or other unlicensed persons who work with or under the supervision of a licensee. Also, Mattson's agency argument would require us to read language into the otherwise plain and unambiguous statute. There may well be sound public policy reasons for expanding the scope of the duty to warn and the statutory

10

immunity beyond simply licensees,[6] but that is a decision for the Legislature, not this court. *See White v. City of Elk River*, 840 N.W.2d 43, 53 (Minn. 2013) (declining to "impermissibly add language to the governing statute that does not exist"). We must read this state's laws as they are, not as some argue they should be. *See In re Estate of Karger*, 253 Minn. 542, 548, 93 N.W.2d 137, 142 (1958) ("What the law ought to be is for the legislature; what the law is, rests with the courts."). We therefore conclude that, because the duty to warn imposed by Minn. Stat. § 148.975 did not immunize Mattson's disclosures to law enforcement during the course of its investigation, she is not entitled to relief on this ground.

## III.

Appellants next argue that the absolute privilege doctrine applies to the statements Mattson made to law enforcement in the course of the investigation and to prosecutors in preparing for her anticipated testimony at trial—specifically, about the nature and circumstances of the threats Expose made against his caseworker. We review the application of absolute privilege de novo. *Minke v. City of Minneapolis*, 845 N.W.2d 179, 182 (Minn. 2014).

The absolute privilege doctrine shields a speaker from liability for statements made in judicial proceedings. *Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, 306 (Minn. 2007). Specifically, the doctrine may apply where a statement is (1) made by a judge, attorney, or witness; (2) made at a judicial or quasi-judicial proceeding; and (3) relevant to

---

[6] We express no opinion on whether Mattson would have a duty to warn under the amended statute. Act of May 22, 2016, ch. 163, art. 3, § 2, 2016 Minn. Laws 612, 644.

the subject matter of the litigation. *Id.* (citing *Matthis v. Kennedy*, 243 Minn. 219, 224, 67 N.W.2d 413, 417 (1954)). Although the privilege is intended to encourage "frank testimony by witnesses," *id.*, it "is not lightly granted and applies only in limited circumstances," *Zutz v. Nelson*, 788 N.W.2d 58, 62 (Minn. 2010).

The person claiming the protection of the doctrine bears the burden of proof. *Mahoney & Hagberg*, 729 N.W.2d at 306. We will apply absolute privilege only when the " 'administration of justice requires complete immunity from being called to account for language used.' " *Id.* (quoting *Matthis*, 243 Minn. at 223, 67 N.W.2d at 417). Before applying absolute privilege, however, we determine whether "there are competing policy interests that would counsel against application of the privilege." *Id.* at 309. For instance, "[a] separate duty of a witness to remain silent, grounded for example in the attorney-client privilege, might be a reason the public policy analysis would weigh against application of the absolute privilege doctrine." *Id.*

Although absolute privilege extends to statements published before a judicial proceeding occurs, for absolute privilege to apply, the statements must have some relation to the judicial proceeding. *Id.* at 306 (citing *Matthis*, 243 Minn. at 226-28, 67 N.W.2d at 418-19). For instance, voluntary witness testimony given in a deposition or affidavit published prior to a judicial proceeding is protected by absolute privilege. *Id.* Statements may be relevant, and therefore protected, if they " 'have reference and relation to the subject matter of the action and [are] connected therewith[.] In other words, does it have reference to or relation to or connection with the case before the court?' " *Id.* (alteration in original) (quoting *Matthis*, 243 Minn. at 225, 67 N.W.2d at 418).

12

Mattson argues that she is entitled to the protection of absolute privilege because her disclosures to law enforcement and the prosecutors had "some relation" to the criminal proceeding. The court of appeals declined to apply absolute privilege to Mattson's voluntary pretrial disclosures to law enforcement and the prosecutors after the court of appeals balanced the competing policy interest of the therapist-client privilege against the purpose of the absolute privilege.[7] *Expose*, 863 N.W.2d at 108. The court of appeals concluded that the purpose of the therapist-client privilege (to keep information concealed) and the purpose of the absolute privilege (to reveal information) are "so contrary and inconsistent that applying the absolute privilege effectively would defeat the [therapist-client] privilege." *Id.* at 107. We agree.

We previously have declined to extend absolute privilege to a licensed psychologist who disclosed to the patient's mother and the mother's attorney allegedly defamatory statements that the patient made during a therapy session. *Bol v. Cole*, 561 N.W.2d 143, 149 (Minn. 1997). In *Bol*, we noted the commentary in the Restatement (Second) of Torts that explained that the privilege rests to some extent on " 'a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests.' " *Id.* at 148 (quoting Restatement (Second) of Torts § 584, at 243 (1977)). Although the disclosures in *Bol* were not made in the context of a criminal

---

[7] The court of appeals held that Mattson is entitled to the protection of absolute privilege with respect to her trial testimony, *Expose*, 863 N.W.2d at 108, and this aspect of the court's decision is not before us.

13

investigation and proceedings, as here, our discussion of the public interest in *Bol* is nonetheless instructive. We recognized that the public interest in encouraging psychologists to accurately record information regarding their patients was strong, but "not sufficiently strong" to warrant shielding psychologists from wrongful disclosures. *Id.* at 149. Given the narrow limits within which we apply absolute privilege, we required a showing of a public interest "of paramount importance, such that it is entitled to protection even at the expense of failing to compensate harm to the defamed person's reputation." *Id.*

Although the need to warn those who face a specific threat of violence is a compelling public interest, that need is satisfied once an initial report is made to law enforcement. *See* Minn. Stat. § 148.975, subd. 2. Here, given the facts of this dispute, we cannot say that appellants have demonstrated a public interest "of paramount importance." We conclude that an absolute privilege does not extend to either the statement Mattson made to prosecutors before trial or to the statements she made to the investigating officer in her second conversation with that officer.[8] Thus, we affirm the court of appeals on this ground.

## IV.

Finally, we determine whether Mattson violated the Minnesota Health Records Act when she spoke with the investigating officer and prosecutors before trial. Because the Client Rights and Responsibilities form that Expose signed was a notification of his rights

---

[8] Appellants also asserted qualified privilege in their responses to Expose's complaint. Because neither the district court nor the court of appeals addressed the application of a qualified privilege, we do not address whether such a privilege exists here.

14

as they relate to his health records, and was not a consent to release his health records, we conclude that the district court erred in dismissing this claim.

The Minnesota Health Records Act, specifically Minn. Stat. § 144.298, subd. 2(1), provides a cause of action for negligently or intentionally releasing a health record in violation of Minn. Stat. §§ 144.291-.297. The term "health record" is defined in the statute to include "any information, whether oral or recorded in any form or medium, that relates to the past, present, or future physical or mental health or condition of a patient [or] the provision of health care to a patient." Minn. Stat. § 144.291, subd. 2(c).

The Client Rights and Responsibilities form that Expose signed lists six "responsibilities" that are expected of patients, such as the responsibility to keep scheduled appointments, to actively participate in counseling sessions, and to inform the clinic if the patient is dissatisfied with its services. The form also lists 13 rights that the patient is entitled to expect from the clinic, such as the right to be treated with respect, to ask questions, and to receive honest answers. The eighth item states that the client has the following rights:

> To have information about you treated as strictly confidential, unless:
>
> a.  You or your guardian give written permission to the Multicultural Mental Health Clinic to release specific types of information regarding your case to specific persons or agencies.
>
> b.  There is reasonable cause to believe that a child or vulnerable adult is being neglected, or physically or sexually abused.
>
> c.  There is sufficient reason to believe that a client may do bodily harm to self or others. In such a case, appropriate persons or agencies will be contacted in order to prevent such injury.

15

The court of appeals held that the Client Rights and Responsibilities form that Expose signed before engaging the clinic's services did not comply with the Minnesota Health Records Act because the form did not specify the particular health records that could be released once Expose signed it and did not specify the limits of Expose's consent. *Expose*, 863 N.W.2d at 104. We agree.

Minnesota Statutes § 144.293, subd. 2(1), allows for the release of health records with "a signed and dated consent from the patient." As the court of appeals noted, section 144.293 suggests that a consent form must include "specific limitations that would reflect the patient's knowing and voluntary authorization of a particular release." *Expose*, 863 N.W.2d at 104. For example, Minn. Stat. § 144.293, subd. 10(a)(2) requires that a person who requests the health records of a patient, while relying on patient's consent, warrants that the patient's consent "accurately states the patient's desire to have [his or her] health records disclosed." A person disclosing health records also must warrant that the disclosure "complie[s] with the limits set by the patient in the consent." *Id.*, subd. 10(c)(3). The form that Expose signed did not state his consent to disclose his records or include any limitations on his consent. Therefore, the form is not the type of consent contemplated by the statute. *Id.*, subd. 2(1). Because Expose did not provide consent to disclose information about his treatment in the manner set out in section 144.293, subdivision 2, the district court erred in dismissing Expose's claim alleging that Mattson's disclosure of Expose's threats during her second conversation with the investigating officer and during her pretrial

meeting with prosecutors violated the Minnesota Health Records Act. Accordingly, we affirm the decision of the court of appeals.

Affirmed.


HUDSON, J., took no part in the consideration or decision of this case.


McKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration of this decision.